**STEELCASE, INC., a corporation, Plaintiff-Appellant Cross-Appellee,**

v.

**DELWOOD FURNITURE CO., INC., a corporation, Defendant-Appellee Cross-Appellant.**

**STEELCASE, INC., a corporation, Plaintiff-Appellant,**

v.

**DELWOOD FURNITURE COMPANY, INC., a corporation, Defendant-Appellee.**

Nos. 75–2170, 76–3061.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1978.

Rehearing Denied Oct. 24, 1978.

James A. Mitchell, Lloyd A. Heneveld, Grand Rapids, Mich., for plaintiff-appellant in Nos. 75–2170 and 76–3061.

W. J. Sullivan, Jr., Birmingham, Ala., for plaintiff-appellant in No. 75–2170.

Hugh P. Carter, Birmingham, Ala., Garrett R. Tucker, Jr., Alan D. Rosenthal, Houston, Tex., for defendant-appellee in Nos. 75–2170 and 76–3061.

Frank B. Pugsley, Houston, Tex., for defendant-appellee in No. 76–3061.

Before SKELTON *, Senior Judge, and FAY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A chair manufacturer who deliberately copied the highly successful chair being marketed by a competitor justifies his actions on the basis that the patents for the chair he copied were invalid. National policy encourages competition on the theory that the battle of the marketplace benefits consumers. Because every patent creates a monopoly, Congress has balanced the encouragement of inventions with its devotion to competition,[1] and exacted standards for patent validity that deny patent protection even to some successful and innovative ideas. Thus, patentability requires that an invention be useful and novel, as defined in 35 U.S.C. §§ 101 and 102, and nonobvious. 35 U.S.C. § 103. *Graham v. John Deere Co.*, 1966, 383 U.S. 1, 12, 86 S.Ct. 684, 691, 15 L.Ed.2d 545; *Gaddis v. Calgon Corp.*, 5 Cir. 1975, 506 F.2d 880. The trial court found the patents invalid for their failure to meet the standard of nonobviousness. Finding its fact findings supported by the record and its legal conclusions correct, we affirm.

I.

Steelcase obtained a design patent (843)[2] and a utility patent (499)[3] covering shell type office chairs consisting of a three-dimensional molded plastic shell with integral seat and back, reminiscent of an egg or claim shell, mounted on a pedestal type base. Steelcase marketed this as its 451 series. The chair was lower priced than competitive models and found a ready market. Indeed, it was perhaps the most successful model ever offered on the American market. Delwood Furniture noted Steelcase's success and copied the chair.

The asserted patentable distinction between the Steelcase 451 chair and prior shell chairs is that the 451 chair consists of two independent shells, the inner one providing support and the outer one designed for appearance or decorative effect. Although the two separate chairs appear to the user to be a single unit, they are attached to form what Steelcase calls a "chair within a chair." The inner chair is a structurally complete shell chair designed with sufficient thickness and rigidity to bear the entire load of the body of the user. It could, by itself, serve adequately as a chair. This shell is placed inside a non-load bearing decorative exterior shell having suffi-

---

\* Senior Judge of the United States Court of Claims, sitting by designation.

1. Persons granted the 17 year monopoly afforded by a patent must have added to the sum of useful knowledge, lest the effect of the grant be to subtract from resources formerly freely available to skillful persons. *Great Atlantic &*

*Pacific Tea Co. v. Supermarket Equipment Corp.*, 1950, 340 U.S. 147, 152–53, 71 S.Ct. 127, 130, 95 L.Ed. 162.

2. United States Letters Design Patent No. 225,-843.

3. United States Letters Patent No. 3,669,499.

cient thickness and rigidity only to hold a desired configuration.

Because the outer chair carries no load, the designers can sculpture it so as to make it aesthetically pleasing, without regard to strength or conformity to the user's anatomy. The chair can be provided with arms, each arm being a continuous member connected at the back and seat of the chair in a concealed manner by notching the structural shell and by wrapping the arm members around to the rear of the structural shell and attaching it. (The arms are discussed more fully in Part V dealing with the design patent). Virtually every reader of this opinion will have seen one of these chairs in offices of contemporary design.

In the first trial, completed in July, 1974, the design patent (843) was held invalid as an obvious alteration, modification or combination of prior art. The trial court discussed each of the eighteen claims in the utility patent (499) and held eleven either invalid or not infringed but found seven claims valid and infringed. After a supplemental hearing in which the district court found no patent misuse, both parties appealed.

■ Delwood then discovered a Belgian patent that it contended was relevant and obtained permission to move for a rehearing before the district court. That court granted a rehearing limited to consideration of issues raised by discovery of the Belgian patent; it then reversed its earlier findings with respect to the seven claims in the utility patent and held them invalid as obvious. Although these claims of the utility patent were not anticipated by the express claims of the Belgian patent, the district court held, "[t]he process for manufacture, as reflected in the Belgian patent . ." made obvious the development of the claims in the utility patent. It reached this conclusion by considering what was implicit in the claims of the Belgian patent although only explicit claims could be considered on the question of anticipation. *See Reeves Bros., Inc. v. U. S. Laminating Corp.*, E.D. Pa.1968, 282 F.Supp. 118, 136, and authority cited therein. Steelcase appealed both the

trial court's decision to grant a rehearing and the conclusions reached. We consider both appeals together.

## II.

■ As a threshold matter, we determine that the trial court acted within the range of discretion imparted to him under Rule 60(b), Federal Rules of Civil Procedure, when he granted the motion to consider the Belgian patent on the ground that it was newly discovered evidence.

The court implicitly determined that Delwood's failure to locate the Belgian patent earlier was not the result of lack of due diligence. In this it was not clearly in error. Having reached this factual conclusion, it was an appropriate exercise of his sound discretion to grant the motion. *Edwards v. Joyner*, 5 Cir. 1978, 566 F.2d 960; *First Wisconsin Nat. Bank of Milwaukee v. Grandlich Development Corp.*, 5 Cir. 1978, 565 F.2d 879.

## III.

■ Although there is a statutory presumption of validity which attaches to patents passing the scrutiny of the patent office, 35 U.S.C. § 282, the failure of that office to consider pertinent prior art references will seriously weaken it. *Parker v. Motorola, Inc.*, 5 Cir. 1975, 524 F.2d 518; *Gaddis v. Calgon Corp.*, 5 Cir. 1975, 506 F.2d 880. It is undisputed that the patent office did not have Belgian Patent No. 724,771 before it when it issued the utility patent or the IV and Cosco chairs when it issued the design patent. The patents in this case will, therefore, be subject to greater scrutiny in our review.

Congress has enacted a statute entitled *"Conditions for patentability; non-obvious subject matter."* 35 U.S.C. § 103. The statute denies patentability for non-obviousness " if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made

to a person having ordinary skill in the art to which said subject matter pertains."[4]

This doctrine is not new to us. We have considered its application many times, in some instances concluding that the patent lacked non-obviousness, *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc.*, 5 Cir. 1978, 575 F.2d 530; *Bird Provision Co. v. Owens Country Sausage, Inc.*, 5 Cir. 1978, 568 F.2d 369; *Robbins Co. v. Dresser Industries, Inc.*, 5 Cir. 1977, 554 F.2d 1289; *Fred Whitaker Co. v. E. T. Barwick Industries, Inc.*, 5 Cir. 1977, 551 F.2d 622; *Parker v. Motorola, Inc.*, 5 Cir. 1975, 524 F.2d 518; *Garrett Corp. v. American Safety Flight Systems, Inc.*, 5 Cir. 1974, 502 F.2d 9; *Swofford v. B & W, Inc.*, 5 Cir. 1968, 395 F.2d 362; *Zero Mfg. Co. v. Mississippi Milk Prod. Ass'n*, 5 Cir. 1966, 358 F.2d 853, and in others concluding that it was valid, *Yoder Bros., Inc. v. California-Florida Plant Corp.*, 5 Cir. 1976, 537 F.2d 1347; *Gaddis v. Calgon Corp.*, 5 Cir. 1975, 506 F.2d 880; *Hobbs v. United States Atomic Energy Comm'n*, 5 Cir. 1971, 451 F.2d 849; *Stockham Valves & Fittings, Inc. v. Arthur J. Schmitt Foundation*, 5 Cir. 1968, 404 F.2d 13; *Smith Industries International v. Hughes Tool Co.*, 5 Cir. 1968, 396 F.2d 735.

■ Directing how the statute should be applied, the Supreme Court in *Graham v. John Deere Co.*, 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, held that the ultimate question of patent validity is one of law, but application of the nonobviousness test depends upon several basic factual inquiries: the scope and content of the prior art, the differences between the prior art and the claim at issue, and the level of ordinary skill in the pertinent art. Obviousness or nonobviousness is to be determined against this background.[5] *See also Sakraida v. Ag Pro, Inc.*, 1976, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784; *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc., supra.* The trial court's findings on these basic factual inquiries are controlling unless they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure; *Kaspar Wire Works, Inc. v. Leco Engineering and Machine, Inc., supra; Bird Provision Co. v. Owens Country Sausage, Inc., supra*, 568 F.2d at 372; *Parker v. Motorola, Inc., supra*, 524 F.2d at 531; *Garrett Corp. v. American Safety Flight Systems, Inc., supra*, 502 F.2d at 14.

## IV. The Utility Patent—499

The conclusion that the utility patent embodies a development that was obvious necessarily turns on the consideration given the Belgian patent. As we have noted, the trial court viewed the art embodied in the foreign patent more broadly in determining obviousness than in deciding anticipation. In doing so, it was correct.

■ The statute requires that, to be patentable, an invention must possess novelty of subject matter. 35 U.S.C. § 102. This requires consideration of the prior art to determine whether the particular patent was anticipated. The test for anticipation relates, however, to novelty: it requires a showing of actual identity in the prior art before a patent will be held anticipated and,

---

**4.** The Patent Act of 1952 codified existing judicial precedents. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784. With respect to nonobviousness, 35 U.S.C. § 103 followed the discussions in *Hotchkiss v. Greenwood*, 1850, 52 U.S. 248, 13 L.Ed. 683; *Hollister v. Benedict & Burnham Mfg. Co.*, 1885, 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901; *Cuno Engineering Corp. v. Automatic Devices Corp.*, 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; *Goodyear Tire & Rubber Co. v. Ray-O-Vac Co.*, 1944, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, *rehearing denied*, 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663.

These cases considered the standard implicit in the constitutional provision granting power to Congress "To promote the Progress of Science and [the] useful Arts . . . ." Art. I & 8, cl. 8. *See Graham v. John Deere Co.*, 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.

**5.** "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or non-obviousness, these inquiries may have relevancy." *Graham v. John Deere Co., supra*, 383 U.S. at 17–18, 86 S.Ct. at 694, 15 L.Ed.2d at 556.

hence, invalid. Indeed there is authority that anticipation requires that all material claimed features of a patent be contained in a single prior art reference. *Kamei-Autokomfort v. Eurasian Automotive Products*, 9 Cir. 1977, 553 F.2d 603; *Tights v. Acme-McCrary Corp.*, 4 Cir. 1976, 541 F.2d 1047; *Shanklin Corp. v. Springfield Photo Mount Co.*, 1 Cir. 1975, 521 F.2d 609; Rosenberg, Patent Law Fundamentals 238 (1st Ed. 1975).

■ Obviousness, on the other hand, may be found from the teachings of the whole of the prior art and the improvements on those teachings that would be obvious to the hypothetical person of ordinary skill in that art. *Dann v. Johnston*, 1976, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692; *Parker v. Motorola, Inc.*, 5 Cir. 1975, 524 F.2d 518, 532; *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.*, 6 Cir. 1964, 332 F.2d 406, *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93; *Selmix Dispensers, Inc. v. Multiplex Faucet Co.*, 8 Cir. 1960, 277 F.2d 884. *Cf. Bendix Corp. v. Balax, Inc.*, 7 Cir. 1970, 421 F.2d 809, *cert. denied*, 1970, 399 U.S. 911, 90 S.Ct. 2203, 26 L.Ed.2d 562 (in which the defense was anticipation). The court should consider not only the specific findings of a prior patent but also the inferences that one skilled in the art would draw from it. *Parker v. Motorola, supra*, 524 F.2d at 532. There is no reason, therefore, to restrict the examination of foreign patents to their explicit claims and ignore what can be inferred from those claims. The state of the art does not depend on the provincial view that the available knowledge is only that published in one locality or contained only in domestic patents. The prior art is all of that knowledge that would have been available to any person having ordinary skill in the art. This hypothetical person of ordinary skill is not deemed to be omniscient, but he must be assumed to share the knowledge available in his art (to persons of ordinary skill)

wherever it may originate. In finding that the teachings of the Belgian patent as well as its explicit claims should have been available to a person of ordinary skill in the art, the trial court was not clearly in error.

■ It recognized that the Belgian patent did not require the outer shell to be non-load bearing, but it found that "the manufacturing process makes it clear and apparent that it is unnecessary for the outer shell to perform any load-carrying function." He concluded that the claims made were but extensions of previously existing principles that would have been clear to one possessing ordinary skill in the relevant prior art, taking into account the relatively low skill of the art in this particular relatively uncreative field. He attributed the commercial success of the chair (a consideration also urged as supporting the validity of the design patent) to be significantly affected by its lower price. Although the defendant contends that the lower cost was an inherent attribute of the utility and design patents, it appears that the cost saving itself was the result of improvements that were within the range of persons of ordinary skill in the art. The court, therefore, concluded that the utility claims were obvious. The findings of fact on which the ultimate conclusion is based are supported by the record. Therefore, we affirm the holding of invalidity with respect to those claims of the 499 patent covered by the trial court's judgment.

### V. The Design Patent [6]—843

The design patent covers a chair that is said to have a "warm, embracing look," described lyrically in Steelcase's brief as employing "delicately sculptured arms [that] seem to grow out of the chair, rather than having the appearance of being merely tacked on."

---

**6.** 35 U.S.C. § 171 states:

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for design, except as otherwise provided.

The chair made by Steelcase as disclosed by the 843 design patent was the first to incorporate all the features that made it a commercial success. This alone, however, does not mean that it was patentable as beyond the obvious. We have seen the various chairs displayed at the time of oral argument. The record and our view of the same chairs observed by the trial court amply support the trial court's findings as to the design patent.

The trial court found that there was a tendency in the art of chair design at the time the design patent was issued to concentrate on minor modifications of existing design and construction, on imitation as distinguished from invention. Of necessity, examination of the level of skill in the art under consideration is a *sine qua non* to determining what would have been obvious to a person of ordinary skill in that particular art because it defines the skill possessed by that hypothetical person, neither a genius nor a dolt, versed only in the particular field ("art") under consideration. *See Schnadig Corp. v. Gaines Mfg. Co., Inc.,* 6 Cir. 1974, 494 F.2d 383, 388; *Reeves Instrument Corp. v. Beckman Instruments, Inc.,* 9 Cir. 1971, 444 F.2d 263. The trial judge did not expressly compare the talent of the designer with what appellant correctly characterizes as "the low level" in the chair design field, but, inferentially, he did so and concluded, with substantial support from the record, that the design would have been obvious to persons merely of ordinary skill even if they possessed less talent than Steelcase attributes to its designer.

The trial court had the opportunity to compare the design chairs with designs embodying the prior art. It found small differences between the 451 chair and a chair formed by the Pollock body, the IV arms, and the Cosco concealment concept for arm attachment. It also considered other chairs embodying similar designs. Whatever novelty might be involved in the combination disclosed by design patent 843 was, it found, the type of improvement that would be concentrated on, and familiar to, designers in the art.

In addition, it found that the practice of the industry to concentrate on minor modifications of existing designs suggested that a chair consisting of a combination of parts from prior art would be obvious to a person of ordinary skill in that art. These are factual findings, and they are to be upheld unless clearly erroneous. *Bird Provision Co. v. Owens Country Sausage Inc.,* 5 Cir. 1978, 568 F.2d 369; *Hughes Tool Co. v. Varel Mfg. Co.,* 5 Cir. 1964, 336 F.2d 61. Because these fact findings are supported by the record and the legal conclusion of the design patent's invalidity based thereon is not in error, we AFFIRM.