Jerome CANADY, M.D., and
Argon Electro–Surgical
Corp., Plaintiffs,

v.

**ERBE ELEKTROMEDIZIN GMBH
and Erbe U.S.A., Defendants.**

**No. Civ.A. 96–2012(RMU).**

United States District Court,
District of Columbia.

March 31, 2000.

Timothy R. DeWitt, Arnold & Porter, Washington, D.C., for the plaintiffs, Jerome Canady and Argon Electro–Surgical Corporation.

Martin Paul Hoffman, Hoffman, Wassen & Gitler, Arlington, Virginia, for the defendants, Erbe Elektromedizin GmbH and Erbe U.S.A.

Nate F. Scarpelli, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, Illinois, for the defendants, Erbe Elektromedizin GmbH and Erbe U.S.A.

### *MEMORANDUM OPINION*

URBINA, District Judge.

**Granting the Plaintiffs' Motion for Relief from Summary Judgment of Non–Infringement**

### I. INTRODUCTION

At issue in this action is U.S.Patent No. 5,207,675 ("the 675 patent"). The 675 pat-

ent relates to an electro-surgical[1] device which facilitates blood coagulation.[2] The plaintiffs, Jerome Canady and Argon Electro–Surgical Corporation (collectively "Canady") own the 675 patent. The defendants, a German corporation named Erbe Elektromedizin GmbH and a related corporation named Erbe U.S.A. (collectively "Erbe") manufacture and sell several models of an electrosurgical device known as an APC Probe. "APC" stands for Argon Plasma Coagulation.

Canady filed the instant action seeking declaratory judgment that Erbe's APC Probes infringe various claims of his 675 patent. Erbe counterclaimed that the 675 patent is invalid because it was anticipated and rendered obvious by "prior art" which was not considered by the United States Patent and Trademark Office ("PTO"). Erbe moved for summary judgment declaring that (1) the 675 patent is invalid and (2) in any event, Erbe's APC Probes do not infringe upon it. By Order and Memorandum Opinion dated September 10, 1998, this court denied defendant Erbe's motion for summary judgment on invalidity but granted its motion for summary judgment of noninfringement.[3] See Canady v. Erbe, 20 F.Supp.2d 54 (D.D.C. 1998).

Canady appealed from the grant of summary judgment of noninfringement to defendant Erbe.[4] On May 10, 1999 the U.S. Court of Appeals for the Federal Circuit affirmed without opinion. See Canady v. Erbe, 1999 WL 319475 (Fed.Cir.1999).

Plaintiff Canady filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). He seeks to vacate the portion of this court's September 1998 order which granted summary judgment of noninfringement to the defendants.[5] Mr. Canady contends that Erbe wrongfully withheld non-privileged documents which were clearly responsive to several interrogatories and requests for production. The withheld documents, he contends, could have supplied him with a meritorious response to Erbe's motion for summary judgment of noninfringement. Specifically, Erbe failed to produce two types of documents which are relevant to whether its APC probes infringed on his 675 patent: (1) an "Office Action" which the PTO sent to Erbe in response to its application for a patent on the APC probes; and (2) an Amendment which Erbe filed in response to the Office Action.

For the reasons set forth below, the court concludes that the information not disclosed by Erbe is material to the infringement issue and *might* have enabled Canady to withstand Erbe's motion for summary judgment of noninfringement. Accordingly, the court will grant Mr. Canady's motion for relief from judgment. The court will vacate that portion of its September 1998 Order which granted summary judgment of non-infringement to defendant Erbe.

1. Electrosurgery refers to the class of surgical procedures "in which electricity is required either in the actual surgical apparatus or in the application of electrical cautery." *Taber's Cyclopedic Medical Dictionary* 573 (16th ed. 1989) ("*Taber's*"). "Cautery" is "A means of destroying tissue by electricity, freezing, heat, or corrosive chemicals." *Id.* at 308.

2. Coagulation is the process of clotting. *See Taber's* at 373.

3. Erbe also moved for default judgment, claiming that Canady failed to answer or otherwise respond to its counterclaims. Because the court granted the defendants' motion for summary judgment of noninfringement, holding that their APC probes did not infringe upon Canady's 675 patent, the court denied as moot the defendants' motion for default judgment.

4. Defendant Erbe did not appeal from the portion of this court's order which denied its motion for summary judgment of invalidity.

5. Mr. Canady obviously does not seek relief from the portion of the Order which denied defendant Erbe's motion for summary judgment of invalidity. The court emphasizes that it has never decided whether or not Mr. Canady's 675 patent is valid.

## II. THE INVENTIONS

### A. Canady's 675 Patent

On July 15, 1991, Dr. Jerome Canady filed a patent application entitled "Surgical Coagulation Device." After several amendments, the PTO approved the application and issued the 675 patent to Canady on May 4, 1993. The 675 patent covers a device that controls or prevents blood flow in tissue for various types of surgical procedures using an endoscope.[6] Specifically, the 675 patent discloses a device using ionizable gas[7] and radiofrequency current[8] to cause blood coagulation in tissue. The 675 device uses ionizable gas, such as argon, as a medium to conduct radiofrequency current to the tissue. When the current comes into contact with the tissue, it causes blood in the tissue's blood vessels to "blow away." As a result, the blood vessels coagulate, reducing or ending blood flow in the affected tissue.

The 675 patent discloses a flexible tube passing through an endoscope. The tube houses a flexible wire used to conduct a radiofrequency current. The tube allows the gas to flow through the tube and endoscope. At the distal[9] tip of the tube and wire, the gas is discharged. The discharge creates a gas stream which conducts the RF current from the flexible wire to the tissue.

**In the 675 patent, claim 1 states the patented invention as follows:**

1. A surgical tissue coagulator comprising an elongate, biocompatible, flexible tube having an open distal end and a proximal end, the tube having an external diameter of less than about 5 mm and being insertable into and maneuverable within a surgical endoscope;

[a] means for connecting the proximal end of said tube with a source of an inert,[10] ionizable gas so that a stream of said gas can flow through said tube and exit the distal end of said tube;

a flexible wire within said tube for conducting radio frequency current, the wire having a distal end for position adjacent [to] the distal end of said tube, and means at the distal end of said wire for discharging an arc of radiofrequency energy away from the distal end of said wire within said stream of inert gas exiting the distal end of said tube so as to form an ionized gas stream which is capable of coagulating tissue during endoscopic surgery within a patient, the wire having a proximal end opposite the distal end of the wire, and means for connecting the proximal end of the wire with a source of radiofrequency energy; and

*a handle attached to said tube adjacent [to] the proximal end of the tube for maneuvering said tube within said endoscope while said handle is outside said endoscope.* (Col. 4, Line 67 to Col. 5, Line 25) (emphasis added).

Figure 2 of the 675 patent, as shown below, illustrates a preferred embodiment of the claimed invention. The preferred embodiment is used for surgical procedures where a flexible tube is passed

---

6. An endoscope is "a device consisting of a tube and optical system form observing the inside of a hollow organ or cavity. This observation may be done through a natural body opening or through a small incision." *Taber's* at 594.

7. Ionization is the "dissociation of compounds (acids, bases, salts) into their constituent parts." *Taber's* at 942.

8. As the diagrams *infra* indicate, the 675 device is connected to a radiofrequency transmitter. A radiofrequency transmitter supplies electrical stimuli. *See Taber's* at 1552.

9. In this context, the distal end of the endoscope is the end which is inserted into the patient's body. The other end of the endoscope is the proximal end. *See Taber's* at 520, 1503.

10. An inert substance is one which "has little or no tendency or ability to react with other chemicals," *See Taber's* at 907.

through an endoscope to conduct the RF current and carry the ionizable gas.

The preferred embodiment describes a tube (10) connected to a handle (18) and insertable into an endoscope (16). The tube (10) provides a flexible wire (28) for conducting RF current and extends to a distal end (30). The handle (18) is located outside of the endoscope for maneuvering the tube (10) and flexible wire (28) within the endoscope (16). The handle (18) in-cludes a coaxial inlet (56) having a gas inlet (42) and a RF inlet (22). The tube (10) connects to the coaxial inlet (56) on the handle (18). The gas inlet (42) and RF inlet (22) connect to a gas line (26) and a RF line (46), respectively, from a coaxial outlet (54) on a base unit. The base unit includes a gas source (24) and a RF gener-ator (44) that supply the gas line (26) and RF line (46) with gas and RF current, respectively.

FIG. 2

The ionizable gas and RF current flow from the base unit to the tube (10) through the coaxial inlet (56) on the handle (18). At the distal end (30) of the wire (28), the ionizable gas is discharged to form a gas stream and conducts RF current to the tissue (38) to cause coagulation.

The handle (18) is used to maneuver the tube (30) and wire (28) within the endo-scope.

## B. Erbe's APC Probes

### Figure A. Erbe's APC Probes

Erbe's APC Probes serve a similar pur-pose to the 675 device, i.e, to effect coagu-lation using RF current, ionizable gas and an endoscope. The different APC Probes are identical except for tube diameter and length. The Probes include a flexible tube (A) with a distal end (B) insertable into an endoscope. The flexible tube (A) can con-vey ionizable gas and also includes a thin wire to conduct RF current.

In addition, the APC Probes include a plug (C) having an insertable end (G) for connection to a coaxial adapter. The coaxial adapter is connected to a base unit which outputs ionizable gas and RF current to the flexible tube (A) through the insertable end (G) and plug (C). The APC Probes perform tissue coagulation in a similar manner as the 675 patent.

### III. The Grant of Summary Judgment of Noninfringement

#### A. Mr. Canady's Infringement Claim

Mr. Canady contended that Erbe's Probes infringe claim 1 and 11–16 of his 675 patent. Claim 1 is an "independent-apparatus" claim upon which claims 11–12 and 15–16 are dependent. Claim 13 is an "independent-method" claim which contains all the limitations of claim 1. Claim 14 is dependent on claim 13. As such, to prove infringement on claims 11–16, Canady first had to show that Erbe's APC Probes infringe claim 1.

Claim 1 of the 675 patent recites three elements:

(1) a "means for connecting" a tube with a source of ionizable gas;

(2) "a flexible wire" contained within the tube; and

(3) "a handle" for maneuvering the tube within an endoscope.

*See* 675 Patent, Col. 1, Lines 21–24. Canady alleged that the elements recited in claim 1 "read on" the Erbe probes' insertable end (G), flexible tube (A) and plug (C). Therefore, Mr. Canady alleged, the Probes infringe on claim 1 and claims 11–16 of his 675 patent.

#### B. Defendant Erbe's Response to the Infringement Claim

Erbe did not dispute that its probes share the first two elements of claim 1 with the 675 device: a means for connecting a tube with a source of ionizable gas, and a flexible wire within the tube. *See* 675 Patent, Col. 1, Lines 21–24. Erbe denied, however, that 675's handle reads on the accused "plug" of the APC probes. Erbe argued that the 675 handle does not read on the accused "plug" because the handle has a specific, recited function of "maneuvering" a tube within an endoscope. By contrast, Erbe explained, the plug on its probes is used not for maneuvering, but to connect to a coaxial adapter. Consequently, its probes do not infringe on the 675 patent.

#### C. The Court's Interpretation of Claim 1 of the 675 Patent

As a threshold issue, this court interpreted the proper scope of the claimed "handle" element as recited in claim 1 of the 675 patent. The court then considered

whether Erbe's APC probes infringed upon claim 1 as construed. In construing claim 1 of patent 675, the court considered (1) the claim, (2) the specification and (3) the prosecution history of the patent. *See Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Absent any contrary definition, the court accorded the claim's words their plain meaning. *See In re Zletz*, 893 F.2d 319, 321–22 (Fed.Cir. 1989). The court was cognizant, however, that it could neither narrow nor broaden the scope of the claim to give the patent owner something different than what he intended. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.1988).

As recited in claim 1 of the 675 patent, the handle element is "a handle attached to said tube adjacent [to] the proximal end of the tube" with the purpose of "maneuvering said tube within said endoscope while said handle is outside said endoscope." (Col. 5, Lines 21–24) This purpose of "maneuvering" is clearly supported in the specification. The 675 device's preferred embodiment discloses the handle as "a [h]andle (18) [which] is provided for maneuvering tube (10) within an endoscope (16) while handle (18) is outside the endoscope." (Col. 3, Lines 2–5).

Canady contended that the 675 patent's prosecution history shows that the novelty of the 675 patent is related to the use of an ionizable gas for endoscopic electrosurgery. Canady further asserted that the claimed handle should be broadly interpreted to cover any "handle" element which is positioned outside of an endoscope. *See Canady*, 20 F.Supp.2d at 60. The court found this contention to lack merit. The court declined to interpret the claimed handle to cover all "handle" elements positioned outside of an endoscope; rather, the court followed its obligation to interpret the explicit language of the 675 patent. *Id.* Claim 1 clearly recites a "handle" being further limited by its function of "maneuvering" a tube within an endoscope. *See In re Wilson*, 424 F.2d at 1385 (the court cannot ignore specific language in a claim).

Furthermore, the court noted its obligation to construe claims consistently with the specification and the preferred embodiment. *See Vitronics*, 90 F.3d at 1583. Both 675's claim language and the specification describe a "handle" which "maneuvers" a tube within·an endoscope. The ordinary meaning of "handle" dictated the court's conclusion that the claimed "handle" is "a part to be held or operated with the hand." [11] The clear language of the claim further compelled the conclusion that the "handle" is limited by its recited function of "maneuvering" a tube within an endoscope.

Based on this construction of the 675 patent's claim 1, the court denied Erbe's motion for summary judgment of invalidity.[1213] More important for the instant motion, the court then determined that Erbe's APC probes do not infringe upon claim 1 of Canady's 675 patent.

---

11. *See Webster's Third New International Dictionary* (unabridged) 1027 (1993 ed.) ("a part that is designed esp. to be grasped by the hand or that may be grasped by the hand....").

12. The court emphasizes that the September 1998 decision did *not* hold that Mr. Canady's 675 patent is valid. Mr. Canady did not file a motion for summary judgment of validity. The court merely denied defendant Erbe's motion for summary judgment of *in*validity. Therefore, the import of the 1998 decision is only that, on the record before the court at that time, there was a genuine issue of fact as to whether Mr. Canady's patent is valid. The new evidence may or may not eliminate that genuine issue of fact.

13. The plaintiffs' motion for relief from judgment does not challenge the portion of this court's decision which denied the defendants' motion for summary judgment of invalidity. Accordingly, the court will not recapitulate the prior opinion's discussion of the 675 patent's validity. *See* Sec. III–B of Mem.Op. dated Sept. 10, 1998.

### D. Why this Court Held that Erbe's APC Probes Do Not Infringe the 675 Patent

In determining whether Erbe's APC probes infringed claim 1 of Canady's 675 patent, the court engaged in a two-step analysis. First, the court construed the scope and meaning of claim 1. Then the court compared the claim, as construed, with the accused device. *See Serrano v. Telular Corp.*, 111 F.3d 1578, 1582 (Fed. Cir.1997). As noted *supra*, the court construed claim 1's handle element as having a limitation of "maneuvering" a tube within an endoscope. The court then compared the APC probes' plug to the construed 675 handle claim to determine whether there was (1) literal infringement or (2) infringement by equivalents. *See Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir.1987). Under this test, the court concluded that Erbe's APC Probes do not infringe claim 1 of the 675 patent.

### 1. Why this Court Held that Erbe's APC Probes Do Not "Literally" Infringe the 675 Patent

To prove literal infringement, a patent owner must show that the accused device contains every limitation of the allegedly infringed claim. *See Hormone Research Found. v. Genentech*, 904 F.2d 1558, 1562 (Fed.Cir.1990). Erbe contended that the accused "plug", unlike Canady's handle, is used to connect to an adapter and not to "maneuver" a tube within an endoscope. Because Canady did not present any evidence to dispute this contention, the court found that the "maneuvering" limitation of the 675 handle does not read on the accused plug. Accordingly, the court concluded that Erbe's probes do not literally infringe claim 1 of Canady's 675 patent.

### 2. Why this Court Concluded that Erbe's APC Probes Do Not Infringe Canady's 675 Patent By Equivalents

If an accused device does not literally infringe, it may still infringe under the doctrine of "equivalents" if the differences between the claimed invention and the accused device are insubstantial. *See, e.g., Pennwalt*, 833 F.2d at 934–35. An accused product will be found to infringe by equivalents only if it (1) performs substantially the same function, (2) in substantially the same way, and (3) achieves substantially the same result as the allegedly infringed claim. *Id.* The court found that although Erbe's plug may cover the structural limitations of the recited handle, the plug does not perform the same function. The evidence before the court in 1998 indicated that Erbe's plug is used only to connect to an adapter, while Canady's handle is used to maneuver a tube within an endoscope. Consequently, on the evidence before it in September 1998, the court concluded that Canady's claimed "handle" does not cover the Erbe probes' plug.

Having concluded that Erbe's probes do not infringe on claim 1 of Canady's 675 patent either literally or by equivalents, the court granted Erbe summary judgment of noninfringement.

## IV. Mr. Canady's Motion for Relief from Judgment

### A. Legal Standard for Relief from Judgment

██ Federal Rule of Civil Procedure 60(b) specifies the circumstances under which this court may grant a party relief from a final judgment. Rule 60(b) provides, in pertinent part,

Upon motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; ... (6) any other reason justifying relief from the operation of judgment.

FED.R.CIV.P. 60(b). For the court to grant relief from judgment, Canady must meet four requirements which our cases have established to interpret and implement Rule 60(b):

> (1) The evidence must have been in existence at the time of trial [in this case, at the time of the court's September 1998 summary judgment decision];
>
> (2) The evidence must be such that if was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding;
>
> (3) It must not be merely cumulative or impeaching;
>
> (4) The evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome.

*In re Korean Air Lines Disaster of September 1, 1983,* 156 F.R.D. 18 (D.D.C. 1994); *see also Philippine National Bank v. Kennedy,* 295 F.2d 544 (D.C.Cir.1961). The decision whether or not to grant relief from judgment is ultimately committed to the court's discretion. *See United Mine Workers of America v. Pittston Co.,* 984 F.2d 469, 476 (D.C.Cir.1993).

### B. The "Newly Discovered" Evidence

#### 1. *Plaintiff Canady's Argument*

Canady explains, "Plaintiffs bring this motion because they have recently discovered new, extremely relevant evidence that Defendants ... improperly withheld from discovery. In particular, Erbe improperly withheld from production documents [which] Erbe filed with the [PTO], and responses from the PTO, in connection with a patent application Erbe filed on its APC probes [the accused device].... The newly discovered documents, which Plaintiffs did not discover until April 1999, ... constitute evidence that would have overcome Erbe's" motion for summary judgment of noninfringement. *See* Mot. for Relief at 1–2.

Canady proffers three alternate grounds for relief from judgment under Rule 60:

> (1) new evidence it could not have discovered through due diligence, Rule 60(b)(2);
>
> (2) misrepresentation and wrongful withholding of documents, Rule 60(b)(3);
>
> (3) the catch-all "any other reason justifying relief" from judgment, Rule 60(b)(6).

For the reasons set forth below, the court concludes that Canady has shown the existence of new evidence he could not have discovered through reasonable diligence, which warrants relief from this court's grant of summary judgment of noninfringement under Rule 60(b)(2). Alternately, the court holds that relief from judgment is also warranted under Rule 60(b)(3) on the ground of misconduct by the defendants. *See infra,* n. 21. The court declines to consider whether there might be "other reasons" justifying relief from judgment under Rule 60(b)(6).

#### 2. *Canady's Discovery Requests and Erbe's Response.*

Canady focuses on his Document Request No. 32, which asked Erbe to produce

> All U.S. and foreign patent applications filed by or assigned to Defendants on any subject products, and all documents respecting such applications, *including prosecution histories thereof.*

Mot. for Relief, Ex. A at 14 (emphasis added). On February 27, 1998, Erbe responded:

> Defendants object to the extent this request seeks information as to any products other than the APC probes made, used or sold in the United States.
>
> Defendants object to this request to the extent it seeks information subject to the attorney-client privilege.
>
> *Subject to the objections,* all documents responsive to this request have been produced.

Mot. for Relief, Ex. A at 14 (emphasis added); Defs.' Opp. to Mot. for Relief at 2. According to the plaintiff, the only docu-

ment Erbe produced in response to Request No. 32 was a copy of Erbe's patent application for the APC probes.[14]  *See* Mot. for Relief at 6 and Ex. C.[15] Erbe did **not** produce the PTO's response to that application, nor did Erbe produce the amendment it filed in response to the PTO's concerns.

In March 1999, months after this court granted summary judgment of noninfringement, plaintiff Canady asked his counsel to perform a search and provide him with a list of Erbe's patents. Plaintiffs' counsel performed the search and discovered that a new patent, No. 5,720,-745 ("the Erbe Patent") had issued to Erbe on February 27, 1998, the same day Erbe tendered its response to the document request. Once plaintiffs' counsel obtained and reviewed the Erbe patent and its file history, he learned that the PTO had issued an "Office Action" in response to Erbe's application in March 1997; this led Erbe to file an Amendment of its application in July 1997. The Office Action and the Amendment, together with two articles cited in the Office Action,[16] comprise the "newly discovered evidence" advanced by Canady.

### C. Could the New Evidence Have Changed this Court's Decision to Grant Summary Judgment of Noninfringement?

■  The court first considers whether the new evidence identified by the plaintiffs is material to the issue of whether Erbe's probes infringed claim 1 of Canady's 675 patent. If the new evidence is not material on infringement or is wholly repetitive of evidence previously considered,

relief would not be warranted. In such a case, it would not matter whether Canady showed he could not have discovered the new evidence through due diligence. For the reasons stated below, however, the court finds that the new evidence is material to the infringement issue and is not wholly repetitive of the evidence previously considered.

The first piece of new evidence the court considers is the Office Action the PTO issued in March 1997 in response to Erbe's application for a patent on the APC probes. *See* Mot. for Relief, Ex. D. In the Office Action, the patent examiner identified and apparently relied on two journal articles authored or co-authored by Mr. Guenther Farin, one of the inventors of Erbe's APC probes. *See* Mot. for Relief, Ex. D at 8. Defendant Erbe does not contend that there were any references to these articles in the document which it did produce in response to request number 32—the APC probes patent application. Accordingly, the court finds that the document which Erbe produced in response to request number 32 would not have reasonably alerted Canady to the existence and relevance of the articles. This is significant, because the patent examiner notes the articles and the fact that "two of the inventors of the immediate application were also authors of these papers...." *See* Mot. for Relief, Ex. D at 8. Thus, Erbe's nonproduction of the Office Action, and Canady's resulting lack of awareness of the articles, could have impaired his ability to argue the proper construction of the Erbe patent. Specifically, if Erbe had produced the Office Action, Canady could have reviewed the cited articles[17] as to

---

14.  U.S.Patent No. 5,720,745, issued on February 24, 1998. *See* Mot. for Relief, Ex. C.

15.  As plaintiff Canady points out, the PTO keeps patent applications confidential, so Canady could not know for certain whether Erbe turned over all the documents responsive to his request for patent applications and prosecution histories.

16.  Canady also advances, as newly discovered evidence, a third article which he says he learned about only by reading the two articles cited in the Office Action.

17.  The court has reviewed the two articles cited in the Office Action. They are Karl Ernst Grund and Guenther Farin *et al.*, "Endoscopic Argon Plasma Coagulation (APC) First Clinical Experiences in Flexible Endoscopy," *Endoscopic Surgery and Allied Tech-*

whether the probes' inventors viewed "maneuvering" as a potential function of the plug.

Indeed, the court agrees with Canady that some language in the articles could be read to support his allegation that the Erbe probes' "plug" could be used for maneuvering. For instance, in Erbe's successful motion for summary judgment of noninfringement, Erbe contended, "Once in the desired position the [flexible inner] tube is not moved within the endoscope during the tissue coagulation procedure." *See* Mot. for Relief, Ex. J at 8. Similarly, Erbe stated not merely that the plug was not actually used to maneuver the tube within the endoscope, but further that the plug *could not* be so used: "The plug C is not, and cannot be, used 'for maneuvering said tube within said endoscope' as required by the ordinary meaning of the [675 patent's] claim terms.... Accordingly, plug C does not satisfy the handle limitation." *Id.* at 11–12. Some of the published comments of Erbe's inventors—which Canady could have uncovered had Erbe produced the Office Action—could be read to undermine Erbe's claim on this score.

For example, in one of the articles cited in the Office Action, two of the inventors of Erbe's probe write, "As with the laser, APC is applied mostly in a 'backward' direction during withdrawal of the unit." Mot. for Relief, Ex. L at 44. This description is consistent with the possibility that that backwards movement could be accomplished through use of the plug, which is, after all, at the proximal end of the tube. Similarly, one of Erbe's inventors wrote in an article that "The physical principles governing APC ... allow good control *and maneuverability* of devitalization, coagulation and desiccation with a homogenous penetration depth over wide areas." Mot.

for Relief, Ex. M at 197.[18] While this statement alone does not specify whether the maneuverability is due to the plug, taken in combination with other evidence it could support that contention. Lastly, in its motion for summary judgment Erbe asserted. "[A] minimum of four feet of tubing exists between the proximal end of the tube and the distal end of the tube. Because the tube is *flexible*, it defies reason to suggest that a person could use the plug C to maneuver the tube within an endoscope." Mot. for Relief, Ex. J at 14. Yet the issued Erbe patent states that "the surgeon [using an APC probe] can grip a proximal end region of the tube in order to move the tube in the direction into or out of the endoscope...." Mot. for Relief, Ex. C at col. 17, 4–5.

Again, this is consistent with the possible use of the plug to maneuver the tube. First, the plug is at the tube's "proximal end region", which Erbe's patent says can be gripped to move the tube within the endoscope. Moreover, the evidence does not establish whether enough of the tube protrudes from the endoscope to allow the tube to be maneuvered *without* grasping the "plug" and using it as a handle. As Canady points out, without contradiction by Erbe, "during use, the majority of the tube is within the endoscope. Thus, only a small portion of the flexible tube remains between the 'plug' and the opening of the endoscope." Mot. for Relief at 14 n. 3. Absent contrary evidence, this suggests that it would be difficult or impossible to maneuver the tube within the endoscope without using the plug as a handle. Indeed, Mr. Canady, himself a general surgeon who has performed endoscopic surgery, states without contradiction that "[i]n the Erbe APC Probes, a hard plastic piece [the plug] is placed *over* the proximal

*nologies,* No. 1, Vol. 2, 42–46 (1994) and Karl Ernst Grund and Guenther Farin, "Technology of Argon Plasma Coagulation with Particular Regard to Endoscopic Applications," *Endoscopic Surgery and Allied Technologies,* No. 1, Vol. 2, 71–77 (1994). *See* Mot. for Relief, Exs. L and K.

18. This quote comes from an article written by one of the probes' inventors, Karl Ernst Grund: "Argon Plasma Coagulation (APC): Ballyhoo or Breakthrough?", *Endoscopy* vol. 29 at 196–98 (1997).

end region of the [inner] tube." *See* Reply[19] in Support of Mot. for Relief, Ex. 1 at ¶ 4 (Declaration of Jerome Canady, M.D., dated May 28, 1999). In any event, Canady never needed to prove that a surgeon using the APC probe would *have to* use the plug to maneuver the tube within the endoscope, nor even that surgeons actually do so. Rather, Canady need only prove that the plug *could* be used to maneuver the tube within the endoscope. *See Intel Corp. v. ITC,* 946 F.2d 821, 832 (Fed. Cir.1991) (accused device need only be *capable* of performing the recited function).

In short, the court concludes that the new evidence identified by the plaintiffs is material to the infringement issue and is not wholly repetitive of the evidence the court considered in reaching its September 10, 1998 noninfringement decision. Moreover, taken against the backdrop of the existing evidence, the court cannot say that the new evidence would not have changed this court's decision to grant summary judgment of noninfringement.[20] Accordingly, the court considers whether Canady could have discovered the evidence through due diligence.[21]

### D. Could Canady have Obtained the New Evidence by the Exercise of Due Diligence before the 1998 Decision?

Erbe contends that Canady could have obtained the PTO's Office Action and Erbe's Amendment—and thereby the articles cited in the Office Action—if it had exercised due diligence. *See generally* Opp. to Mot. for Relief at 4–7. The court disagrees.

Specifically, Erbe contends that Canady was on notice that Erbe could be withholding documents responsive to Canady's Document Request No. 32. *See* Opp. to Mot. for Relief at 4. Erbe contends that Canady should be barred from introducing the withheld documents now because he "fail[ed] to inquire as to what documents were withheld based on [Erbe's] two expressly stated objections" to Document Request No. 32. *Id.* It is true that Canady did not request a privilege log or otherwise challenge Erbe's two objections, as perhaps he should have. However, this is immaterial, because nothing in the record suggests that either of Erbe's objections to document request 32 was the reason for its withholding the Office Action and Amendment. On the contrary, Erbe has never explained why it withheld those documents, both of which are clearly responsive to plaintiffs' document request number 32.

Significantly, even now Erbe does not claim that it withheld the newly discovered documents pursuant to its objections to document request number 32, nor pursuant to its objections to any other applicable interrogatories or production requests. First, Erbe objected to document request 32 to the extent that the request sought documents relating to products not made, used or sold in the United States. But Erbe has not asserted that either the Office Action or the Amendment related to the probe application qualified for nonproduction under this first objection. Indeed, nothing in the record contradicts the court's understanding that at least some Erbe APC probes are made, used and sold

---

**19.** The defendants did not seek leave to file a sur-reply.

**20.** The court expresses no opinion on whether the new evidence will, in fact, enable Canady to survive a renewed motion for summary judgment of noninfringement.

**21.** To grant relief from judgment pursuant to Rule 60(b)(2), the court must find that the movant could not have discovered the new evidence through due diligence prior to the

time of the judgment. *See* FED.R.CIV.P. 60(b)(2). Rule 60(b)(3), however, authorizes the court to grant relief from judgment if the court finds that the reason for the non-disclosure of the new evidence was some fraud, misrepresentation or other misconduct by the non-movant (Erbe). Therefore, as explained below, this court's grant of relief from judgment is appropriate even if Canady could have discovered the new evidence through the exercise of greater diligence.

in the United States. The court agrees with Canady that "[t]he improperly withheld documents here ... were clearly related to the APC probes at issue and thus did not fall within the objection" as to non-US products. Pl.'s Reply at 8.

Secondly, Erbe objected to Canady's document request number 32 "to the extent it seeks information subject to the attorney-client privilege." Even now, however, Erbe does not claim that it withheld the newly discovered evidence pursuant to the attorney-client privilege, or any other privilege for that matter.[22][23] Instead, Erbe simply contends, "Plaintiffs were on notice that documents responsive to the request may not have been produced." *See* Opp. to Mot. for Relief at 4. This statement by Erbe is accurate as far as it goes, but it is misleadingly incomplete. It is disingenuous to say, without more, that Erbe's still-unexplained withholding of evidence should be excused because Erbe's objections placed Canady on notice that Erbe might be withholding responsive documents. Erbe's objections placed Canady on notice *only* that Erbe might be withholding documents which fell under its relevance or privilege objections to request 32, not that it might be withholding responsive documents which did not qualify under these objections.

The court agrees with the plaintiffs that "Erbe's objections did not in any way indicate that Erbe had withheld *relevant, nonprivileged* documents, but to the contrary, identified the withheld documents as irrelevant [the objection as to non-US products] or privileged [the objection as to attorney-client privileged documents]." Pl.'s Reply at 8–9. Thus, Erbe's own response to document request number 32 reasonably led Canady to believe that Canady had produced all relevant, non-privileged documents responsive to that request—a category that certainly included the Office Action and the Amendment. Detrimentally relying on this reasonable belief, Canady had no reason to investigate further. Indeed, Canady had no reason to suspect that the PTO Office Action or Erbe's resultant Amendment even existed.

Based on the foregoing, the court concludes that Canady could not reasonably be expected to uncover the new evidence,[24]

22. Indeed, it is difficult to see how defense counsel *could* have withheld the Office Action and Amendment pursuant to any of its discovery objections, since defense counsel stated in writing, subsequent to the court's September 1998 judgment, that they did not have the withheld documents in their possession. In response to plaintiff counsel's letter asking why the documents were withheld, defense counsel wrote, "We would appreciate it if you would provide copies of the allegedly relevant documents (*which are not currently in our possession*) ...." *See* Mot. for Relief, Ex. F (Letter dated April 9, 1999 from Nate Scarpelli to Tim DeWitt) (emphasis added).

As plaintiffs' counsel wrote to defense counsel, "Seeing as you do not have the documents, I do not see how you possibly could have withheld them on the basis of privilege." Mot. for Relief, Ex. F (letter from DeWitt to Scarpelli dated 4/12/99).

23. Neither the parties nor future litigants should overstate the breadth of the court's holding on this score. The court does *not* hold that Rule 60(b)(2) movants are generally relieved from the need to challenge the opposing party's stated reasons for withholding evidence from discovery. The court does not rule out denying a Rule 60(b)(2) motion for lack of due diligence in discovery under the appropriate circumstances. Specifically, the court could find a lack of due diligence where the record shows both that (1) the movant failed to challenge the non-movant's stated grounds for withholding responsive documents and (2) the withheld documents were *actually* withheld pursuant to the stated grounds, so a successful challenge to the stated grounds could have resulted in the production of the documents.

24. The court's discussion thus far has centered on the withheld Office Action and Amendment, but Canady also advances the articles cited in the Office Action as new evidence. Erbe contends that Canady should have unearthed these articles without relying on Erbe's discovery responses: "[B]ecause all three articles were published in journals directly related to the technical field of this litigation, Plaintiffs should have been aware of the articles, ...." *See* Opp. to Mot. for Relief at 7. Under other circumstances, this argument might have some merit. Here,

through due diligence, prior to this court's September 1998 decision of noninfringement. Because the court has already found that the new evidence is material and not wholly redundant of the existing evidence, Canady has met the requirements for relief from judgment under Rule 60(b)(2).[25] Accordingly, the court will grant Canady relief from the portion of this court's September 10, 1998 Order which granted summary judgment of noninfringement to the defendants.

### E. Alternate Holding: Relief from Judgment under Rule 60(b)(3) due to the Misconduct of the Adverse Party

■ As an alternate rationale for today's decision, the court notes that defendants' still-unexplained withholding of clearly responsive, relevant and non-privileged documents is consistent with the plaintiffs' allegation that the defendants engaged in misconduct.[26]

First, the court has already discussed the defendants' refusal to produce the Of-

fice Action and Amendment in response to Document Request 32. In addition, Canady served the defendants with Document Request 25, which asked for "[a]ll documents relating to any patent or patent application naming Dr. Canady as an inventor." *See* Mot. for Relief, Ex. B at 11. The Office Action and Amendment both discuss Canady's 675 patent, so they were clearly responsive to this request. Yet Erbe withheld these documents and stated in response to request number 25, "All documents responsive to this request have been produced to Plaintiffs."

Likewise, Canady's propounded an interrogatory asking Erbe to "[i]dentify all patents and patent applications covering Defendants' surgical coagulation devices which may be inserted into an endoscope, including but not limited to [the APC probes at issue]." Mot. for Relief, Ex. 4 at 8. Defendant Erbe again represented that it had produced all responsive documents: "Subject to the following Defendants have produced the patent and patent applica-

---

however, the court must disagree, in light of the defendants' still-unexplained failure to produce responsive, relevant documents. The court agrees with the plaintiffs that "Due diligence does not refer, as Erbe suggests [to] catching an opposing party hiding documents it was supposed to produce. Further, in view of Erbe's discovery responses, Plaintiffs had no reason to conduct a worldwide literature search to uncover the publications that Erbe should have produced during discovery." Reply Supporting Mot. for Relief at 3. *Cf. Steelcase, Inc. v. Delwood Furniture Co.*, 578 F.2d 74, 77 (5th Cir.1978) (failure to locate Belgian patent earlier was not result of lack of due diligence).

25. As an alternate ground for relief from judgment under the catch-all provision of Rule 60(b)(6), Canady emphasizes that defendant Erbe is "a foreign company of significant size" which "evade[d] discovery" in a lawsuit brought by an American litigant "of limited means." Mot. for Relief at 3. The plaintiffs charge that defendants' misconduct "is exactly the type of conduct that casts a pall on American courts and American lawyers and encourages other foreign companies to pursue the [same] obstructive litigation tactics." Reply for Mot. for Relief at 15.

This court was not influenced by the fact that one of the defendants is incorporated outside the United States, nor by the fact that defendants are "big corporations."

26. This opinion does **not** hold that defense counsel committed fraud or other intentional misconduct. Even the plaintiffs do not allege that defense *counsel* was at fault for Erbe's failure to produce the withheld documents. Rather, the record suggests that the defendants may have withheld the documents from their own counsel.

In April 1999, plaintiffs' counsel asked defense counsel to explain why the defendants had withheld the Office Action and Amendment. *See* Mot. for Relief, Ex. F (Letter dated 4/8/99 from DeWitt to Scarpelli). Defense counsel responded, "We would appreciate it if you would provide copies of the allegedly relevant documents (which are not currently in our possession). . . ." *See id.* (Letter dated 4/9/99 from Scarpelli to DeWitt). Plaintiffs' counsel responded, "I am relieved to hear that you personally do not have the documents I recently discovered, and I will be sure to direct any motions we file to your client's conduct rather than yours." *See id.* (Letter from DeWitt to Scarpelli dated 4/12/99).

tions covering Defendants' APC Probes accused of infringement." *Id.* As with Erbe's objections to document request 32, there is no reason to believe that Erbe's objection to interrogatory 10 applies to the withheld Office Action and Amendment: "Defendants object to this interrogatory as irrelevant, overbroad, and unduly burdensome to the extent this interrogatory seeks information relating to any other surgical coagulation devices which may be the subject of pending applications or patents." The withheld Office Action and Amendment were not related to "other … devices" within the meaning of Canady's Interrogatory 10. Rather, the Office Action and Amendment concerned precisely the devices at issue here. *See also* Pl.'s Reply at 9 (Office Action and Erbe's resultant Amendment were also responsive to Canady's document request number 35).

Erbe has never claimed that it thought the Office Action and Amendment were not responsive to Canady's document requests 25, 32 and 35 and interrogatory 10, nor does the record disclose any ground for such a misapprehension. Consequently, the court is also justified in granting, and does grant relief from judgment pursuant to Rule 60(b)(3) on the ground of "misconduct of an adverse party." Unlike subsection (2) (newly discovered evidence), subsection (3) does **not** require the movant to show that he exercised due diligence in seeking the evidence. Thus, even if the court held that plaintiffs would have discovered the new evidence through the exercise of due diligence—which the court does not—there is sufficient unrebutted evidence of defendants' misconduct to justify relief from judgment under Rule 60(b)(3).

**V. Conclusion**

For the reasons stated above, the court will grant the plaintiffs' motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) and (3). An Order consistent with this Memorandum Opinion is separately and contemporane-ously executed and issued this 31st day of March, 2000.