**CORSON AND GRUMAN COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–1217.

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1990.

Decided March 27, 1990.

---

**48**

John William Mannix, Washington, D.C., for petitioner.

Barbara A. Atkin, Supervisory Atty., N.L.R.B., with whom Steven B. Goldstein, Robert E. Allen, Associate Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., were on the brief, for respondent. Beverly A. Oyama, N.L.R.B., Washington, D.C., also entered an appearance for respondent.

Before GINSBURG, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Corson and Gruman Company, a general construction firm doing business in the Washington metropolitan area, petitions this court to review a decision and order of the National Labor Relations Board stemming from alleged violations of section 8 of the National Labor Relations Act. The Board, in turn, has cross-applied for enforcement of its order. We find no reversible error in the Board's determination that the Company illegally withdrew recognition from its employees' union and failed to reinstate one of its returning strikers; we therefore deny the petition for review and grant the Board's cross-application for enforcement.

By a 1978 memorandum of understanding, the Company's underground utility division employees, represented by Local 77, International Union of Operating Engineers, were covered by a collective bargaining agreement between a contractors' association and the Union. Before the agreement's expiration date of June 30, 1980, the Company joined the association in anticipation of new contract negotiations with the Union. When the association and the Union failed to reach a new agreement, the Union struck and the Company halted its contributions to the employees' benefit trust funds.

Shortly after the strike began, several members of the association reached an agreement with the Union. On July 15, 1980 the Company withdrew from the association as a result of this separate agreement. In a memorandum circulated to its employees the same day, the Company announced its withdrawal from the association and stated that it must "terminate [its] long standing relationship with Local 77, I.U.E.O. in the Sewer, Water, and Gas Agreement." Three days later, the Union sent two telegrams to the Company. The

first message declared the Union's "unconditional request [for] immediate reinstatement" of striking employees; the second reiterated the Union's legal position that the Company had illegally withdrawn from the association and was bound to accept the Union's new agreement with the association. That same day, one of the striking employees, James Hamilton, individually asked to return to his job as a mechanic. That request, along with the Union's, was rejected.

On July 24, 1987, five years after the case was submitted to it, the Board concluded that the Company had violated section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5) and (1), by illegally withdrawing recognition of the Union and ceasing its payments to the employees' benefit trust funds. The Board also decided that the Company had violated section 8(a)(3) and (1), 29 U.S.C. § 158(a)(3) and (1), by failing to reinstate Hamilton, an economic striker who unconditionally offered to return to work. *See Corson and Gruman Co.*, 284 N.L.R.B. No. 130 (1987). The Board then ordered the Company to reinstate Hamilton with backpay and to cease and desist from committing unfair labor practices. The Company was also ordered to bargain with the Union and pay on behalf of returning strikers any benefit trust contributions illegally withheld from them. The Company now challenges the legal validity of and evidentiary basis for these orders.[1]

The lengthy and unfortunate delay in deciding this case generated the main dispute in this review of the Board's order. Five months before the Board's decision, the Board changed its view of section 8(f) "pre-hire agreements" in the building and construction industry. *See John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375 (1987), *enf'd sub nom. International Ass'n of Bridge, Structural and Ornamental Iron Workers Local 3 v. NLRB*, 843 F.2d 770 (3d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) ("Deklewa"). Under *Deklewa*, a contractor in a

section 8(f) relationship with its union need not recognize or bargain collectively with the union *after* the expiration of the pre-hire agreement, unless the union wins a Board-conducted election or the employer voluntarily recognizes the union upon a showing of majority status. *See Deklewa*, 282 N.L.R.B. at 1377–78. The Board announced that the new principle would apply " 'to all pending cases in whatever stage.' " *Id.* at 1389 (quoting *Deluxe Metal Furniture Co.*, 121 N.L.R.B. 995, 1006–07 (1958)). The Company's primary argument before us is that only a section 8(f) relationship existed with the Union, and therefore the Board should have applied *Deklewa* in deciding whether the Company illegally withdrew recognition.

Whatever substantive merit that contention might have, this court is simply the wrong forum to entertain the argument in the first instance. Section 10(e) of the Act provides that "[n]o objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). Under the Board's rules of procedure, a motion for reconsideration must be filed within 28 days of the Board's decision. *See* 29 C.F.R. § 102.48(d)(2). The Company first argued that a section 8(f) relationship existed and raised the *Deklewa* issue in a motion for reconsideration nine months after the Board had decided the case and some 14 months after *Deklewa* had been decided. Until that time, the Company had steadfastly insisted that it had *never* withdrawn its recognition of the Union.

We find no circumstances here that would excuse the Company's failure to pursue its *Deklewa* objection before the Board in a timely manner. The Company did not raise the section 8(f) issue originally before the Board; indeed, the Company's explanation for its behavior was completely inconsistent with its current reliance on *Deklewa*. The Company also could have lodged

---

1. The Company does not challenge the Board's finding that the Company violated section 8(a)(1), 29 U.S.C. § 158(a)(1), by threatening

employees who honored a primary picket line or who engaged in lawful primary picketing.

a letter with the Board soon after the *Deklewa* decision to seek reopening of the case or at least to bring the issue to the Board's attention. Finally, the Company could have filed a timely motion for reconsideration raising the arguments it presents here. The Company failed to avail itself of any of these procedures, and therefore we have no cause to consider its *Deklewa* argument. *See National Fuel Gas Supply v. FERC*, 811 F.2d 1563, 1566 (D.C.Cir.), *cert. denied*, 484 U.S. 869, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987). The Board was never placed on notice that a section 8(f) relationship might be at issue and that *Deklewa* might be applicable. Even if the Board did err in not applying *Deklewa*, moreover, the Company should have addressed that mistake initially before the Board, not this court. *See United States v. Tucker Truck Lines*, 344 U.S. 33, 36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952).[2]

 Since we, therefore, assume the Company was obliged to bargain with the Union, we conclude that substantial evidence supports the Board's determination that the Company violated section 8(a)(5) and (1) by withdrawing its recognition of the Union. The Company's July 15, 1980 memorandum to the employees announced the "termination" of its relationship with the Union and referred to the striking workers as "prior employees." Moreover, a vice-president of the Company had stated to the Union that the Company would be an "open shop" and that it would be "restaffing" its workforce. Based on this evidence, the Board could reasonably infer that the Company had severed its relationship with the Union. Likewise, we agree that the Company's failure to pay benefit trust contributions for returning strikers violated the duty to bargain and contravened section 8(a)(5) and (1).[3]

 We also agree with the Board that the Company violated section 8(a)(3) and (1) by refusing to reinstate Hamilton. The Company, of course, may permanently replace striking workers, *see NLRB v. MacKay Radio and Tel. Co.*, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938), but an economic striker retains the right to be reinstated at the next available vacancy if he tenders an unconditional offer to return, unless the Company can show a " 'legitimate and substantial business justification[ ],' " *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967) (quoting *NLRB v. Great Dane Trailers*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1797–98, 18 L.Ed.2d 1027 (1967)). Here, Hamilton individually called his shop superintendent and offered to return unconditionally. The Union, on behalf of all the employees, also requested the immediate and unconditional reinstatement of all the workers. The Company declined both requests. The Board concluded that a vacancy existed because six persons worked under the agreement with the Union before the strike and only five individuals were employed after the strike. Absent a legitimate and substantial business reason, Hamilton should have been reinstated the moment a vacancy occurred.[4]

---

**2.** We are not persuaded by the Company's excuse that it was conducting settlement negotiations in the wake of the Board order. It could have easily explored settlement while pursuing formal reconsideration before the Board.

**3.** Hamilton is the only known returning striker. However, we leave for the compliance proceeding the determination of the precise number of returning strikers eligible for payment of illegally withheld contributions.

**4.** The Company contends that the pre-strike and post-strike figures are misleading because there were five *mechanics* at all times. The sixth job, which apparently was eliminated, was a position as a welder; welders belong to a separate bargaining group. Although it did note this point before the Board, the Company never raised this issue in its opening brief before us and therefore waived the argument in this court. *See Reyes–Arias v. INS*, 866 F.2d 500, 504 n. 2 (D.C.Cir.1989). We require petitioners and appellants to raise all of their arguments in the opening brief to prevent "sandbagging" of appellees and respondents and to provide opposing counsel the chance to respond. Moreover, the Company raised the separate bargaining group argument in the last three pages of its reply brief, which exceeded by five pages the maximum page limit of 20. *See* Rule 11(d), *General Rules of the United States Court of Appeals for the D.C. Circuit*. These page limits are important to maintain judicial efficiency and ensure fairness to opposing parties. The Company never filed for leave of this court to exceed those

 

In sum, we uphold all of the Board's unfair labor practice determinations. Because of the Board's delay in resolving this case, however, the Board's bargaining order may create an anomaly. If the Company were indeed in a section 8(f) relationship with the Union, it would, presumably, no longer be obliged to bargain with the Union under present law. We leave that issue to the compliance proceeding. For the foregoing reasons, the petition for review is denied and the Board's cross-application for enforcement of its order is granted.

*It is so ordered.*

limits, and we will not consider arguments contained in those excess pages.