90 F.3d 591
 155 L.R.R.M. (BNA) 2576, 319 U.S.App.D.C. 368
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PARAGON PAINT & VARNISH CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 95-1386.
 United States Court of Appeals, District of Columbia Circuit.
 June 11, 1996.
 
 Before: EDWARDS, Chief Judge, GINSBURG and ROGERS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 Upon consideration of petitioner's petition for review, and of the opposition thereto, it is
 
 
 2
 ORDERED and ADJUDGED by the Court that the petition for review of the National Labor Relations Board's order, and the cross-application for enforcement, are, respectively, denied and granted to the extent consistent with the attached memorandum opinion.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1) (January 1, 1994).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Petitioner seeks review of the decision and order of the National Labor Relations Board finding numerous violations of § 8(a)(1), (3), and (5) of the National Labor Relations Act ("the Act"). 29 U.S.C. § 158(a)(1), (3), (5) (1994). Petitioner contends generally that the Board should reject the findings of the Administrative Law Judge (ALJ) because the ALJ was biased. Because the Board did not rely on those aspects of the ALJ's decision that are of particular concern to petitioner in this regard, such as the ALJ's finding that petitioner's president stared down the witnesses, we find no basis to conclude that bias infects the Board's determinations. In addition, the ALJ's dismissal of several of the Union's allegations reinforces the Board's conclusion that petitioner has failed to show that the ALJ was biased.
 
 
 5
 Petitioner also contends that some of the Board's findings are unsupported by substantial evidence; we disagree. Petitioner maintains that the ALJ erred in finding that petitioner unlawfully terminated employees Arias and Sossinski so that they could not join the Union, and that petitioner committed unfair labor practices in connection with the events of December 22, 1993, the strike five days later, and the February 1, 1994, work stoppage. There is substantial evidence to support the ALJ's findings, Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951), and the Board properly deferred to the ALJ's credibility assessments, Conair Corp. v. NLRB, 721 F.2d 1355, 1368-69 (D.C.Cir.1983), cert. denied, 467 U.S. 1241 (1984).
 
 I.
 
 6
 The amended complaint charged that petitioner had violated § 8(a)(1), (3), and (5), and the ALJ found no less than fifteen violations. The Board agreed. Many of the violations were attributed to the conduct of petitioner's president, Selma Rattner, whose Union animus was deemed to be the motivation behind many of the violations. The ALJ found that Rattner discharged employees to prevent their joining the Union, and discriminated and retaliated against Union members, particularly Union leaders, by issuing warnings and assigning the employees more onerous work. The ALJ also found that a work stoppage occurred on December 22, 1993, as a result of petitioner's unlawful discharge of employees in retaliation for their protected union conduct, rejecting petitioner's claim of a lawful layoff in light of a business slowdown. On December 27, during the work stoppage, the Union made an offer to Rattner to return to work. Petitioner disputes the ALJ's findings that this offer was an "unconditional" offer and that petitioner rejected it. On February 1, 1994, the employees returned to work for a few hours, but left the facility that same day; the ALJ found that they were unlawfully locked out, which petitioner also disputes. We turn to the disputed issues.
 
 
 7
 Bermas' lack of authority to bargain. The Board found that petitioner violated § 8(a)(1) and (5) by failing to give its lawyer, Bermas, proper authority to act at grievance meetings with the Union. See also § 8(d), 29 U.S.C. § 158(d) (1994). This finding is supported by substantial evidence. A Union lawyer and the Union Secretary/Treasurer testified that Bermas had no authority to make any decisions, that all decisions had to be made by Rattner, and that when grievances were discussed, Bermas left the meeting to discuss them with Rattner. The ALJ credited the Union officials' testimony. The ALJ pointed out that "[w]hile respondent is not required to be represented by an individual with final authority to enter into an agreement, this privilege is subject to the proviso that such limitation does not act to inhibit the progress of negotiations." See United Brotherhood of Carpenters and Joiners of America, AFL-CIO, 244 N.L.R.B. 277, 281 (1979); Schmitz Meat, Inc., 313 N.L.R.B. 554, 560 (1993); Wycoff Steel, Inc., 303 N.L.R.B. 517 (1991). Thus, because Bermas lacked real authority to negotiate, and negotiations were thereby inhibited, the ALJ found that petitioner failed to engage in good faith grievance discussions with the Union.
 
 
 8
 Discharge of Arias and Sossinski. The Union security clause required that certain employees must join the Union after sixty days of employment. Petitioner maintains that the Board's findings with respect to Arias's unlawful discharge and rehiring, see § 8(a)(3), (1); Teamsters Local Union No. 171 v. NLRB, 863 F.2d 946, 955 (1988), cert. denied, 490 U.S. 1065 (1989), are inconsistent with payroll records and other evidence; further, because Arias' job was excluded from the bargaining unit there would have been no reason for petitioner to terminate him to avoid his joining the Union. The ALJ acknowledged that the record was not entirely clear about Arias' period of employment and limited the findings to the firing on August 27, 1993, which is supported by testimony from Michael Murray, the plant manager. The ALJ noted that in view of Arias' good job performance, there was no other explanation for his firing.
 
 
 9
 Petitioner's contentions with respect to the Board's finding as to Sossinski's unlawful discharge and rehiring fare no better. The ALJ could reasonably reject petitioner's excuse--that Sossinski was terminated because he failed to bring his I-9 documentation--as pretextual, since its defense was supported only by Rattner's discredited testimony.
 
 
 10
 Unilaterally changing pay schedule. The ALJ found that petitioner violated § 8(a)(1) and (5) by unilaterally changing the terms and conditions of employment with respect to the employees' pay schedule. Substantial evidence supports this finding. Petitioner concedes in its brief that "it is possible [it] may have committed an unfair labor practice when it unilaterally changed the pay date," but contends that when the Union filed a grievance and returned to its weekly payment schedule, the parties reached a "settlement," to which the Board should have deferred. See Central Cartage Co., 206 N.L.R.B. 337 (1973). Because there was no final settlement, petitioner's reliance on Central Cartage is misplaced and its argument unpersuasive. Id.
 
 
 11
 Refusal to provide Union with relevant bargaining information. The Board concluded that petitioner's failure to provide the Union with requested information about medical insurance coverage and an employee list violated § 8(a)(1) and (5). See Oil, Chemical & Atomic Workers Local Union No. 6-418 v. NLRB, 711 F.2d 348 (D.C.Cir.1983). Petitioner did not contest the ALJ's finding as to the insurance information in the exceptions it filed with the Board; hence, it cannot do so now. 29 U.S.C. 160(e) (1994); see Corson and Gruman Co. v. NLRB, 899 F.2d 47, 49-50 (D.C.Cir.1990); see also Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982). As to the list of employees, petitioner concedes that it "may have committed an unfair labor practice" but maintains that it never refused to provide the information, and that in any event the request was overly broad. The Board reasonably concluded that petitioner's failure was a violation of the Act because the information was "clearly relevant to the Union in determining whether the union security clause of the contract was being followed," in light of the Union's concern that petitioner was employing people who should have been in the Union.
 
 
 12
 Events of December 22, 1993. The ALJ found that petitioner violated § 8(a)(1) and (3) because it discriminated in selecting employees for layoff based on their protected union activities. The ALJ referred for a supplemental hearing the issue of how many employees would have been laid off in the absence of union animus, in light of petitioner's predicted slower work the following week. This referral undermines petitioner's contention that the Board erred in adopting the ALJ's finding. Moreover, contrary to petitioner's view, it was not contradictory for the ALJ to find a violation of the Act and at the same time defer a finding as to the precise number of employees unlawfully laid off. The ALJ acknowledged that some layoffs would have occurred because of the slow week, but found that the manner in which the employees were selected was discriminatory and inconsistent with past practice of giving advance notice and following seniority, as well as the parties' contract. Petitioner can point to nothing in the record to show that it acted on the basis of the employees' individual skills. Its reliance on Dairylea Corp., 219 N.L.R.B. 656 (1975) and Gulton Electro-Voice, 266 N.L.R.B. 406 (1983), is misplaced; those cases involved superseniority provisions. The ALJ could reasonably credit Bruno's and the plant manager's testimony that Rattner laid off Bruno in reaction to his protest regarding his vacation pay, a protected activity, and not, as Rattner claimed, because Bruno had been drinking.
 
 
 13
 Unfair labor practice strike, unconditional offer to return, refusal to reinstate. Finding the connection between the strike and the unfair labor practices to be "unmistakable," the ALJ found that the Union had made an unconditional offer to return by letter of January 12, 1994, which Rattner had rejected. Petitioner's objection to the first finding is simply an attempt to reargue the unfair labor practices found by the ALJ. There is no basis to view the strike, as petitioner urges, as an attempt to eliminate management's right to provide less than 40 hours weekly work and to schedule employees based on their skills. Nor is there a basis to claim that the strike was prohibited by the no-strike clause in the parties' contract. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 279-87 (1956). Petitioner's contention that the January 12 letter failed to reflect accurately a telephone conversation between the parties' attorneys is irrelevant; the letter's reference to non-waiver of employees' rights to take legal action did not make the offer to return conditional. Cf. George Banta Co., Banta Div. v. NLRB, 686 F.2d 10 (D.C.Cir.1982), cert. denied, 460 U.S. 1082 (1983); American Cyanamid Co., 235 N.L.R.B. 1316 (1978). Finally, there was the evidence of Rattner's conduct on January 12 and her letters reflecting an unwillingness to accept the return of the employees unless they withdrew their charges against petitioner or settled their back pay demand for the work stoppage.
 
 
 14
 Further unilateral changes in working conditions. The Board found that on February 1, 1994, petitioner violated § 8(a)(1) and (5) by requiring employees to change into their work clothes in the bathroom, thus affecting the terms and conditions of their employment. See Teamsters Local 171, 863 F.2d at 954; see also Gold Coast Restaurant Corp. v. NLRB, 995 F.2d 257, 263-64 (D.C.Cir.1993), judgment amended by No. 91-1533, 1993 WL 444597 (D.C.Cir. Oct. 25, 1993). The ALJ could reject petitioner's claim that Rattner did not require the men to change clothes in the bathroom, based on the testimony of Cerezo and Meyers that Rattner said employees should change in the bathrooms. Petitioner's contention that Cerezo's testimony was unworthy of belief over Rattner's because he had lied about his residence and his health insurance (not in the record before the court) is meritless. See Conair, 721 F.2d at 1368-69.
 
 
 15
 Further impositions of onerous working conditions. The Board concluded that petitioner violated § 8(a)(1) and (3) by assigning Cerezo to be in charge of the employees changing clothes, as punishment for his support of the Union. Neither of petitioner's challenges to the ALJ's findings can prevail. See Teamsters Local 171, 863 F.2d at 954. Petitioner maintains that Rattner merely suggested, and did not require, that Cerezo work with the men to come up with locations where the men could change clothes. Insofar as the ALJ credited the testimony of Cerezo and Meyers rather than Rattner, and found Rattner to have Union animus, the record contains ample support for the Board's conclusion. Likewise, the Board's conclusion regarding the assignments of Meyers and Cerezo to move heavy paint cans for the same reason, is based on the ALJ's reasonable decision to credit the employees' testimony.
 
 
 16
 Events of February 1 to March 8, 1994. The Board concluded that petitioner violated § 8(a)(1) and (3) when Rattner, in light of the employees' support for the Union and their unfair labor practice strike from December 27 to February 1, locked out the employees from February 1 until about March 8, 1994, and violated § 8(a)(1) and (5) by reason of the anti-lock-out provision in the parties' contract. Petitioner's challenges to these findings and conclusions rest on the unpersuasive argument that the ALJ should have credited Rattner's testimony over that of Cerezo.
 
 
 17
 Refusal to defer consideration pending grievance procedures. There is no merit to petitioner's contention that the Board should have deferred action pending completion of the arbitration process that the Union had commenced regarding petitioner's failure to require new employees to be in the bargaining unit. Reliance on Dubo Manufacturing Corp., 142 N.L.R.B. 431 (1963) (requiring parties to utilize their contractual grievance and arbitration procedure, prior to Board processes, in deference to district court's order directing arbitration), is misplaced. The Board could reasonably decline to defer where it found "the [employer's] conduct constitutes a rejection of the principles of collective-bargaining." United Technologies Corp., 268 N.L.R.B. 557, 560 (1984); see also Hammontree v. NLRB, 925 F.2d 1486, 1498 (D.C.Cir.1991) (in banc). This conclusion is supported by the Board's findings that petitioner had repeatedly violated the Act, demonstrated Union animus, and rejected the principles of collective-bargaining.
 
 II.
 
 18
 Petitioner and the Board agree that the Board has the authority to and does require that union merger election conform with minimum due process standards. Petitioner contends that the elections at which its employees voted to merge Local 8-712 into Local 8-406 failed to meet this standard because the Union gave its members insufficient notice of the election and because the Union made no attempt to provide its members with an opportunity to cast secret ballots.
 
 
 19
 We affirm the Board's conclusion that sufficient notice was provided under the circumstances of this case. But, the Board points to no case in which it approved an election to which minimum due process requirements apply in the absence of any attempt at secret voting, and the Board has not persuasively explained why this case is exceptional. We do not deny that the Board may be flexible in determining the minimum due process requirements, but the Board must give better reasons than it has for distinguishing such elections generally, or this election specifically, from elections in which secrecy is required.
 
 
 20
 The issue, however, has no bearing on the substance of the Board's order. Therefore, we leave it to the Board either to treat the order as running in favor of Local 8-712 or to permit Local 8-406 to stand in for Local 8-712 based on the result of a new merger vote that the Board finds to have been conducted in compliance with minimum due process requirements.