**Jerome CANADY, M.D. and Argon Electro–Surgical Corp., Plaintiffs,**

v.

**ERBE ELEKTROMEDIZIN GMBH and Erbe U.S.A., Defendants.**

**No. CIV.A.96–2012 (RMU).**

United States District Court, District of Columbia.

March 5, 2004.

See also 99 F.Supp.2d 37.

Timothy R. DeWitt, DeWitt, Roggih, PLLC, Washington, DC, for Plaintiffs.

Michael R. Weiner, Thomas J. Ramsdell, Carl E. Myers, Marshall, Gerstein & Borun LLP, Chicago, IL, Martin P. Hoffman, Hoffman, Wasson & Gitler, P.C., Arlington, VA, for Defendants.

## *MEMORANDUM OPINION*

DENYING THE DEFENDANTS' MOTIONS TO STRIKE AND FOR ENTRY OF DEFAULT JUDGMENT; STRIKING THE PARTIES' SUMMARY-JUDGMENT SUBMISSIONS; AND SETTING A REVISED BRIEFING SCHEDULE

URBINA, District Judge.

### I.  INTRODUCTION

This patent matter presents a textbook example of how Rambo-style litigation tactics prevent the just and speedy determination of a case. After the court resolved the case by granting the defendants summary judgment on their non-infringement counterclaim, and following the Federal Circuit's affirmance of that decision, the court granted the plaintiffs partial relief from its summary-judgment decision under Federal Rule of Civil Procedure 60(b) because the defendants wrongfully withheld documentary evidence that could have affected this court's ruling. Other intervening events, including a three-year stay of litigation to allow for the exhaustion of reexamination proceedings with the U.S. Patent and Trademark Office ("PTO"), also added to the complex and torpid nature of this litigation. Nevertheless, the

court attempted to set the case on track after the reexamination proceedings concluded by permitting the parties to re-file dispositive motions. Now before the court are the defendants' motion to strike the plaintiffs' answer to the defendants' non-infringement counterclaim, the defendants' motion for entry of default judgment on that counterclaim, and the parties' motions for summary judgment. In recognition of the settled policies disfavoring motions to strike and favoring adjudications on the merits, the court denies the defendants' motions to strike and for entry of default judgment. As for the parties' motions for summary judgment, the court strikes those motions along with their related submissions because of the parties' repeated failure to follow procedural rules and their demonstrated determination to complicate the issues in an already complex case. The court does, however, grant the parties leave to provide new briefing that secures a just and speedy resolution of the case.

## II. BACKGROUND[1]

### A. Factual Background

The plaintiffs own the patent-in-suit, U.S. Patent Number 5,207,675 ("the 675 patent"), which describes an electrosurgical[2] device capable of facilitating blood coagulation[3] during surgical procedures. *Canady v. Erbe Elektromedizin GmbH,* 271 F.Supp.2d 64, 65–66 (D.D.C.2002). The defendants manufacture and sell several models of a similar electrosurgical device known as an argon plasma coagulation ("APC") probe. *Id.* at 66.

This litigation is the result of a chance meeting of the parties at the "Minimally Invasive Surgery Conference" held in Luxembourg in 1992. Am. Compl. ¶¶ 10–13. At that conference, defendant Erbe Elektromedizin GmbH ("Erbe") had a booth demonstrating a new device, the APC, to members of the medical field. *Id.* Plaintiff Canady happened upon the booth and notified defendant Erbe of his own similar invention that he had filed with the PTO for patent on July 15, 1991. *Id.*

Initially, plaintiff Canady filed suit in this court claiming patent infringement by the defendants and seeking a declaratory judgment that the defendants' APC probes infringe the 675 patent. *See generally* Compl. The defendants counterclaimed that there was no infringement and that the 675 patent was invalid because, in certifying the patent, the PTO allegedly failed to consider prior art that renders the device "obvious." Defs.' Counterclaim ¶¶ 23–25. In other words, the defendants asserted that the 675 patent amounted to nothing more than a combination of two previous patents, Manwaring (U.S. Patent No. 5,122,138—issued June 16, 1992) and McGreevy (U.S. Patent No. 4,781,175—issued Nov. 1, 1988). *Id.* As the litigation progressed, Argon–Electrosurgical Corporation joined the case as a plaintiff when it obtained co-ownership of the 675 patent. Order dated July 14, 1997.

---

1. For a more complete account of the case's background, see the court's Memorandum Opinion of July 31, 2002. *Canady v. Erbe Elektromedizin GmbH,* 271 F.Supp.2d 64 (D.D.C.2002).

2. Electrosurgery refers to the class of surgical procedures "in which electricity is required either in the actual surgical apparatus or in the application of electrical cautery." Taber's Cyclopedic Med. Dictionary at 573 (16th ed.1989). "Cautery" is "a means of destroy-

ing tissue by electricity, freezing, heat, or corrosive chemicals." *Id.* at 308.

3. Coagulation is the "process of becoming viscous, jellylike, or solid; especially the change from a liquid to a thickened curdlike state not by evaporation but by chemical reaction." Merriam & Webster's Med. Dictionary, available at http://www.nlm.nih.gov/medlineplus/dictionaries.html.

## B. Procedural Background

Plaintiff Canady initiated the instant action by filing his complaint on August 29, 1996. The plaintiffs' amended complaint was filed on July 14, 1997. On August 5, 1997, the defendants filed their counterclaims for non-infringement and invalidity. The plaintiffs did not file an answer to the counterclaims within the 20–day period prescribed by Federal Rule of Civil Procedure 12(a). Defs.' Mot. to Strike and to Enter Default J. ("Defs.' Mot.") at 2, 4.

The parties offer two competing explanations for the plaintiffs' untimely answer. According to the plaintiffs, one of their counsel, Mark Herlihy, contacted Nate Scarpelli, a member of the defense team, to discuss the exchange of preliminary disclosure materials in mid-August 1997. Herlihy Decl. at 2. Herlihy claims that he discussed the timing of the plaintiffs' answer to the defendants' counterclaims and offered to serve the answer when the parties "met to exchange preliminary disclosure materials, unless [Scarpelli] wanted it sooner." Id. Scarpelli apparently agreed to the timing that Herlihy suggested because he expected the plaintiffs to "serve only a simple denial." Id. The defendants deny that any such agreement or understanding occurred, insisting that the plaintiffs simply neglected to abide by the filing deadline. Defs.' Mot. at 2, 4; Defs.' Reply at 5.

At any rate, the fact remains that the plaintiffs did not file their answer until March 10, 1998.[4] In the meantime, on October 2, 1997, the court held a status conference via telephone to save travel expenses for parties with out-of-town counsel. The defendants did not raise the issue of the plaintiffs' untimely answer during the status conference. In fact, the first time that the court learned of the issue was on February 27, 1998, when the defendants filed a motion for default judgment on their counterclaims. On that same day, the defendants moved for summary judgment on their counterclaims, asserting that the 675 patent is invalid and that their APC probes do not infringe the 675 patent. Defs.' Mot. for Summ. J. at 1–4. In response, the plaintiffs filed an opposition to the defendants' motion for default judgment on March 6, 1998. The plaintiffs did not file their own summary-judgment motion.

On September 10, 1998, the court denied the defendants' motion for summary judgment on patent invalidity but granted them summary judgment as to non-infringement, holding that their APC probes did not infringe the 675 patent. Canady v. Erbe Elektromedizin GmbH, 20 F.Supp.2d 54 (D.D.C.1998). Consequently, the court denied as moot the defendants' motion for default judgment. Id. Thereafter, the plaintiffs appealed the court's partial grant of summary judgment to the Federal Circuit.[5] On May 10, 1999, the Federal Cir-

4. The case docket reflects that the Clerk of the Court filed the plaintiffs' answer "in error." Docket No. 96–2012(RMU). The nature of the error remains unclear, and the parties do not offer an explanation for it. The court need not, however, investigate the reasons for the apparent error given that it does not weigh on the issues before the court.

5. The plaintiffs filed notice of their appeal on October 8, 1998, challenging only the court's award of summary judgment on the defendants' non-infringement counterclaim. Cor-

rected Br. of Appellants, 1998 WL 34100574, at * 25 (Dec. 3, 1998) (asking the Federal Circuit to "vacate the district court's grant of summary judgment of noninfringement"); Reply Br. of Appellants, CANADY v. ERBE ELEKTROMEDEZIN GMBH 1999 WL 33649079, at * 29 (Feb. 9, 1999) (reiterating their request to "vacate the district court's grant of summary judgment of no infringement"). The defendants did not appeal the court's ruling on their invalidity counterclaim. Canady v. Erbe Elektromedizin GmbH, 99 F.Supp.2d 37, 38 (D.D.C.2000).

cuit affirmed this court's decision without opinion. *Canady v. Erbe Elektromedizin GMBH*, 194 F.3d 1335 (Fed.Cir.1999).

■ The case did not end there. On April 28, 1999, before the Federal Circuit issued its decision, the plaintiffs returned to this court with a Rule 60(b) motion, seeking relief from the court's partial grant of summary judgment. *Canady v. Erbe Elektromedizin GmbH*, 99 F.Supp.2d 37, 38 (D.D.C.2000). The plaintiffs alleged that the defendants wrongfully withheld documents that could have supplied a meritorious response to the defendants' motion for summary judgment of non-infringement. *Id.* On March 30, 2000, the court granted the plaintiffs' Rule 60(b) motion. *Id.* In doing so, the court reasoned "that the information not disclosed by [the defendants] is material to the infringement issue and might have enabled [the plaintiffs] to withstand [the defendants'] motion for summary judgment of noninfringement." *Id.* Thus, the court effectively resurrected the defendants' non-infringement counterclaim for purposes of adjudication.[6] *See id.* ("vacat[ing] that portion of its September 1998 Order which granted summary judgment of non-infringement").

On June 21, 2000, the defendants filed a request with the PTO for reexamination of the 675 patent, claiming that the PTO did not have the opportunity to consider certain prior art when rendering its decision on plaintiff Canady's patent application. *Canady*, 271 F.Supp.2d at 66–67. As a result, the court stayed the litigation pending the completion of the PTO's reexamination. *Id.* at 67.

On September 12, 2000, the PTO granted the defendants' request for reexamination after finding a "substantial new question of patentability" affecting various claims of the 675 patent. *Id.* On June 24, 2001, the PTO issued an office action that rejected those claims as unpatentable. *Id.*

Plaintiff Canady then filed a response opposing the PTO's rejection of claims with hopes of altering the PTO's adverse decision. *Id.* On September 24, 2001, the defendants filed a second request for reexamination, pointing out two prior-art references that the PTO did not consider during either its original examination or its first reexamination of plaintiff Canady's patent application. *Id.* The defendants uncovered six additional prior-art references shortly after they filed their second request, thus prompting them to file a third request for reexamination. *Id.* at 68. The PTO granted the defendants' second and third requests for reexamination on No-

---

**6.** The March 30, 2000 Memorandum Opinion states that the court "has never decided whether or not Mr. Canady's 675 patent is valid." *Canady*, 99 F.Supp.2d at 38 n. 5. This statement may appear at odds with the presumption of validity accorded to patents. 35 U.S.C. § 282; *Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761 (Fed. Cir.1995) (recognizing that 35 U.S.C. § 282 presumes that a patent is valid until proven otherwise); *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1270 (Fed.Cir.1985) (stating that a "patent is born valid"). The court recognizes that its role is not to determine whether a patent is valid, but whether the challenger has carried its burden of demonstrating the patent's invalidity by clear-and-convincing evidence. *Magnivision, Inc. v.*

*Bonneau Co.*, 115 F.3d 956, 958 (Fed.Cir. 1997) (informing the challenger of a patent that it must prove invalidity by "clear and convincing evidence"); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed.Cir. 1983) (explaining that "[t]he party supporting validity has no initial burden to prove validity, having been given a procedural advantage requiring that he come forward only after a prima facie case of invalidity has been made"). As a point of clarification, the court ruled that the defendants failed to demonstrate the invalidity of the 675 patent when it denied their invalidity counterclaim. *Canady*, 20 F.Supp.2d at 61. As a result, the court has all along presumed the validity of the 675 patent.

vember 29, 2001 after determining that the prior-art references, when combined with other submissions in the record, "raise a substantial new question of patentability." *Id.*

Meanwhile, back at the courthouse, the plaintiffs filed a motion to lift the stay on January 11, 2002. *Id.* at 73. In support of their motion, the plaintiffs argued that the defendants delayed the PTO's ruling on the first request for reexamination by filing the two additional requests, and that maintaining the stay presented a tactical disadvantage to the plaintiffs in this case. *Id.* The court denied the plaintiffs' motion as unripe because the plaintiffs had not appealed the PTO's June 24, 2001 office action to the Patent Board of Appeals and Interferences and because PTO reexamination proceedings were still underway. *Id.* at 76. The court also noted that continuing the stay would not impose a hardship on the plaintiffs because a final decision from the PTO was expected within a matter of months. *Id.* at 77.

Subsequently, the PTO affirmed the patentability of the claims of the 675 patent and concluded its reexamination proceedings. Pls.' Unopposed Mot. to Lift Stay at 1. The plaintiffs promptly moved, without opposition, to lift the stay. On May 13, 2003, the court lifted the stay, thereby reigniting the litigation. With a green light now in front of them, the plaintiffs charged forward with a motion for summary judgment on liability, reasonable royalty, and willfulness. Without missing a beat, the defendants filed their own set of motions the very next day, including, *inter alia,* a motion to strike the plaintiffs' answer to the counterclaims, a second motion for the entry of default judgment, and a renewed motion for summary judgment on non-infringement. The court now addresses these pending motions.

## III. ANALYSIS

### A. The Defendants' Motions to Strike and for Entry of Default Judgment

The defendants ask the court to strike the plaintiffs' untimely answer to the defendants' counterclaims and enter default judgment on those counterclaims. Before approaching the motion for entry of default judgment, the court turns its attention to the motion to strike.

### 1. The Court Denies the Defendants' Motion to Strike

The defendants served the plaintiffs with their counterclaims on August 5, 1997. Rule 12(a)(2) requires the service of an answer "within 20 days after service" of a counterclaim. FED. R. CIV. P. 12(a)(2). The plaintiffs served their answer on March 10, 1998, more than six months after the 20-day period had elapsed, and after the defendants had filed their first motion for entry of default judgment on February 27, 1998. Defs.' Mot. at 2. The defendants therefore ask the court to strike the plaintiffs' answer as untimely and because the plaintiffs did not bother to move the court for either an extension of time or leave to late-file their answer. *Id.* at 4.

The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664–65 (7th Cir.1992) (citing *Alvarado–Morales v. Digital Equip. Corp.,* 843 F.2d 613, 618 (1st Cir.1988)). Courts generally disfavor motions to strike, however, because they propose a drastic remedy. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.,* 647 F.2d 200, 201 (D.C.Cir.1981) (citing 5C FED. PRAC. & PROC.2d § 1380 at 783); *Morse v. Weingarten,* 777 F.Supp. 312, 319 (S.D.N.Y.1991); *Mirshak v. Joyce,* 652 F.Supp. 359, 370

(N.D.Ill.1987); *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D.Conn.1979).

As mentioned earlier, the plaintiffs offer an explanation for their belated filing. Plaintiffs' counsel Herlihy asserts that, in a telephone call with defense counsel Scarpelli, the parties reached an understanding that the plaintiffs would serve the defendants with an answer to the counterclaims when the parties "met to exchange preliminary disclosure materials." Herlihy Decl. at 2. According to Herlihy, Scarpelli stated that "he expected [the] plaintiffs to serve only a simple denial to the counterclaim[s]" and that Scarpelli had "no problem" with Herlihy's suggested date of service, even though such service would occur after the expiration of the 20–day deadline set by Rule 12(a)(2). *Id.* Herlihy claims that "several additional conversations occurred" in which Scarpelli made no mention of the forthcoming answer, leading Herlihy to believe that the two "had an explicit understanding that no issue would be raised regarding the timing" of the answer. *Id.* The defendants offer another version of the story: they vehemently deny that any such understanding took shape. Defs.' Reply at 5.

■ The defendants filed and served their counterclaims on August 5, 1997. Def.'s Mot. at 2. According to Rule 12(a)(2), the plaintiffs had to serve their answer to the counterclaims on or about August 25, 1997. FED. R. CIV. P. 12(a)(2). It is therefore undisputed that the plaintiffs missed the deadline by more than six months when they filed their answer in March 1998. Pls.' Opp'n at 2. As a result, the court may exercise its discretion to grant the defendants' motion to strike. *See Cobell v. Norton*, 213 F.R.D. 42 (D.D.C.2003) (Lamberth, J.) (granting a motion to strike an untimely filing because "it is only fair to require all parties to the present case to comply with the Federal Rules of Civil Procedure and Local

Rules"); *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. P'shp*, 90 F.Supp.2d 15, 17–18 (D.D.C.2000) (Harris, J.) (striking an affidavit as untimely). But if the court were to rule in favor of the defendants, where would that leave the court and the parties? The answer to this question provides the guiding force for the court's decision.

The defendants would like to strike the plaintiffs' answer so that the court can declare the plaintiffs in default and proceed toward default judgment. Such a result, however, would contravene the established policies disfavoring motions to strike, *Stabilisierungsfonds Fur Wein*, 647 F.2d at 201, and favoring the resolution of cases on their merits. *See Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980) (emphasizing that courts "strongly favor resolution of disputes on their merits" and "it seems inherently unfair to . . . enter judgment as a penalty for filing delays" (internal quotations omitted)). The court therefore denies the defendants' motion to strike and moves on to address the defendants' motion for default judgment.

### 2. The Court Denies the Defendants' Motion for Default Judgment as Moot

Now that the court has ruled against the defendants' motion to strike, the plaintiffs' answer to the counterclaims prevents the application of default judgment. Consequently, the defendants' motion for the entry of default judgment can be summed up in one word: moot. This outcome finds support in the court's prior ruling, which denied the defendants' prior motion for default judgment as moot. *Canady*, 20 F.Supp.2d 54.

■ Even if the court were to strike the plaintiffs' answer, the court still would not be in a position to grant the defendants default judgment in light of the absence of an entry of default. Indeed, a fatal flaw with the defendants' approach is their

blindness to the two-step process calling for the entry of default, followed by the entry of default judgment. FED. R. CIV. P. 55; *Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir.1986); *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981); *see also* 10A FED. PRAC. & PROC. CIV.3d § 2682 (stating that "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)"). The defendants failed to implement the first step by asking the Clerk of the Court to enter default against the plaintiffs. Thus, under this alternate theory, the defendants are in no position to apply for the entry of default judgment.

■ Assuming *arguendo* that the defendants' motion is justiciable, the court would nevertheless be reluctant to trigger the default mechanism in this case. The D.C. Circuit recently confirmed its preference for an adjudication on the merits and a corresponding disfavor for resolving litigation by default. *English–Speaking Union v. Johnson,* 353 F.3d 1013, 1021 (D.C.Cir.2004) (citing *Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1475 (D.C.Cir. 1995)); *accord Whelan v. Abell,* 48 F.3d 1247, 1258 (D.C.Cir.1995) (reiterating "the federal policy favoring trial over default judgment" (citation omitted)); *Jackson,* 636 F.2d at 835 (discussing the "strong policies favoring the resolution of genuine disputes on their merits" (citations omitted)). This line of reasoning rhymes with the Federal Rules of Civil Procedure, which generally embody an effort to ensure that courts decide cases based on the strength of the adversaries' arguments rather than on the skillful use of technicalities. *See Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (explaining that "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of [ ] mere technicalities"). The court therefore declines the defendants' invitation to play "a game of skill in which one misstep by counsel may be decisive to the outcome," accepting instead the well-founded precept disfavoring default judgments. *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *English–Speaking Union,* 353 F.3d at 1021; *Shepherd,* 62 F.3d at 1475; *Whelan,* 48 F.3d at 1258; *Jackson,* 636 F.2d at 835. Accordingly, the court denies the defendants' motion.

## B. The Court Strikes the Parties' Motions for Summary Judgment and Related Briefing

■ As its labyrinthine history suggests, this case has moved beyond the complex due in great part to the parties' failure to comply with the court's standards and local rules in briefing their summary-judgment motions. For example, the defendants' response to the plaintiffs' Local Civil Rule 7(h) statement of undisputed material facts is 64 pages long, nearly 20 pages in excess of Local Civil Rule 7(e)'s 45-page limitation, never mind the fact that the court's order directing the parties to submit abridged summary-judgment briefs never permitted such a response.[7] LCvR 7(e); Order dated May 13,

7. Local Civil Rule 56.1 also sets forth specific procedures for the parties to follow in moving for or opposing summary judgment. LCvR 56.1; *Burke v. Gould,* 286 F.3d 513, 517 (D.C.Cir.2002). First, the rule informs parties moving for summary judgment that "[a] motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." LCvR 56.1. The rule then instructs parties opposing such a motion that "an opposition shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine

2003. Furthermore, while the defendants insist that the plaintiffs' Rule 7(h) statement does not conform with that rule's requirements, the defendants fail to recognize that they too have violated the rule by failing to provide the court with "a separate concise statement of genuine issues" with respect to the plaintiffs' summary-judgment motion.[8] LCvR 7(h); Defs.' Resp. to Pls.' Rule 7(h) Statement of Material Facts. This push-and-pull method of advocacy has no value and is reminiscent of the age-old adage: "first take the log out of your own eye, and then you will see clearly to take out the speck that is in your brother's eye." Luke 6:42 (NASB); *see also In re Conard*, 944 S.W.2d 191, 193 (Mo.1997) (regretting that each party "saw the speck in the other's eye, [but] failed to see the log in his own"); *Wooddy v. Mudd*, 258 Md. 234, 265 A.2d 458, 466–67 (1970) (citing to the Gospel of Matthew in recognition that "most human beings have a tendency to see the shortcomings of others rather than their own shortcomings").

The parade of follies does not end there. To wit, the parties have extensively presented new matters in their respective reply briefs. *See Natural Res. Def. Council v. Envtl. Prot. Agency*, 25 F.3d 1063, 1072 n. 4 (D.C.Cir.1994) (requiring parties to raise all of their arguments in their opening briefs to prevent "sandbagging" and to provide opposing counsel the chance to respond). For instance, the defendants' reply in support of their renewed motion for summary judgment attaches a half-dozen new exhibits, including a videotape and a CD–ROM. In turn, the plaintiffs' reply in support of their own motion for summary judgment comes fully loaded with 13 new exhibits. The inclusion of new matters in the reply briefs has inspired at least some of the parties to seek leave to file a sur-reply. *E.g.*, Defs.' Mot. for Leave to File Sur-reply. To provide a further glimpse into the aggressive nature of this litigation, the court notes that the defendants' proposed sur-reply itself contains new matters and additional exhibits,

---

issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." *Id.* This procedure "isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Burke*, 286 F.3d at 517 (citing *Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C.Cir.1980)); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C.Cir. 1996) (same). Thanks to Rule 56.1, this court is not "obligated to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [an] analysis and determination of what may, or may not, be a genuine issue of material disputed fact." *Burke*, 286 F.3d at 518 (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.Cir.1988)). Instead, the rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson*, 101 F.3d at 151 (citing *Twist*, 854 F.2d at

1425). Although the rule's directive to movants varies slightly from the rule's directive to non-movants, both the movant and the non-movant bear the obligation of clarifying relevant issues for the district court. LCvR 56.1; *Burke*, 286 F.3d at 519 (citing *Gardels*, 637 F.2d at 773). Because the rule helps the district court maintain docket control and decide motions for summary judgment efficiently, the D.C. Circuit has repeatedly upheld district court rulings that hold parties to strict compliance with this rule. *Burke*, 286 F.3d at 517; *Jackson*, 101 F.3d at 150; *Gardels*, 637 F.2d at 773.

8. The defendants have filed a bulky, two-inch thick submission styled as a response to the plaintiffs' Rule 7(h) statement. It is unclear whether the defendants intend this "response" to serve as their statement of genuine issues. If that is the case, the court would consider the submission to be in violation of Rule 56.1's requirements discussed herein. *See supra* n. 7.

potentially calling for the plaintiffs to submit a response to the sur-reply.

This extraordinarily lengthy chain of briefing demonstrates the very real and frightening possibility that the parties seek to spin this litigation into a rolling snowball that continues to grow without an end in sight. The parties' failure to follow a normal chain of briefing—i.e., motion, opposition, and reply—adds confusion where clarity is needed, wastes judicial resources, and subjects the case to needless delay. So that the court may rule intelligently in this complex patent case, the parties must place their best arguments and supportive evidence in their opening briefs rather than selectively discussing some of their points in opening briefs while reserving other missives for closing briefs. *Natural Res. Def. Council*, 25 F.3d at 1072 n. 4; *Corson & Gruman Co. v. Nat'l Labor Relations Bd.*, 899 F.2d 47, 50 n. 4 (D.C.Cir. 1990). Accordingly, in an effort to tame this tempestuous litigation, the court strikes the parties' summary-judgment submissions and sets a streamlined briefing schedule to permit the parties an opportunity to re-brief their positions in a manner that simplifies the issues remaining for adjudication. *See Sani–Top, Inc. v. N. Am. Aviation, Inc.*, 261 F.2d 342, 343 (9th Cir.1958) (stressing the importance of courts having "a full record" before proceeding with rulings rather than being "supplied [facts] ... and piecemeal snatches of the record"); *Divane v. Krull Elec. Co., Inc.*, 2002 WL 31844987, at *1, 2002 U.S. Dist. LEXIS 24333, at *3 (N.D.Ill. Dec. 18, 2002) (disapproving of piecemeal fashion of briefing a motion) *Am. Directory Serv. Agency, Inc. v. Beam*, 1988 U.S. Dist. LEXIS 18520, at *2–3 (D.D.C. June 20, 1988) (Pratt, J.); *Gowdish v. Eaton Corp.*, 1981 WL 2041, at *2, 1981 U.S. Dist. LEXIS 11470, at *5–6 (M.D.N.C. Mar. 2, 1981) (noting that "[p]iecemeal supplementation ... is not a practice that the [c]ourt desires to encourage").

### C. The Court Clarifies the Scope of the Briefing

If the parties submit new briefing, they must stay within set boundaries. The court initially granted the defendants summary judgment on the non-infringement counterclaim and denied summary judgment on their invalidity counterclaim. *Canady*, 20 F.Supp.2d 54. As noted, however, the plaintiffs later sought and won relief from "that portion of [the] ... Order which granted summary judgment of *non-infringement*" because the defendants had wrongfully withheld documents that could have "enabled Canady to withstand Erbe's motion for summary judgment of *non-infringement.*" *Canady*, 99 F.Supp.2d at 38 (emphasis added). Accordingly, the court left untouched the other portions of its original opinion unrelated to the defendants' non-infringement counterclaim. *Id.*

In light of the limited scope of the relief from judgment, the parties' immediate focus for summary-judgment should be the defendants' non-infringement counterclaim. Accordingly, the court allows the plaintiffs to file an opposition to the defendants' original motion for summary judgment addressing only the newly discovered evidence and whether that evidence affects the court's original grant of summary judgment on the defendants' non-infringement counterclaim. In turn, the defendants may file a reply without raising new matters. In the event that the court denies summary judgment on the non-infringement counterclaim, the court will provide guidance to the parties on how to proceed with the case.

### IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motions to strike and

for entry of default judgment, strikes the parties' briefing on summary judgment, and sets a revised briefing schedule. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of March 2004.